Bijan **DANESHVAR**, Plaintiff,

v.

**GRAPHIC TECHNOLOGY, INC.,** Defendant.

No. 97–2304–JWL.

United States District Court,
D. Kansas.

Sept. 18, 1998.

Melissa A. Taylor, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Plaintiff.

Joyce R. Rosenberg, Spencer, Fane, Britt & Browne, Kansas City, MO, Mark P. Johnson, Rowdy B. Meeks, Sonnenschein, Nath & Rosenthal, Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant alleging that defendant failed to promote him on the basis of his race and national origin in violation of Title VII, the KAAD and § 1981. Plaintiff further asserts that defendant retaliated against him for filing a charge of discrimination and this lawsuit. Finally, plaintiff claims that defendant violated COBRA. This matter is presently before the court on defendant's motion for summary judgment (doc. # 60). For the reasons set forth below, defendant's motion is granted in part and denied in part.

## I. Facts [1]

Plaintiff Bijan Daneshvar is a United States citizen of Iranian descent and national origin. In 1988, plaintiff began his employment with Graphic Technology, Inc. as an assistant press operator in the rotary department. In its rotary department, defendant produces bar code labels for shipping companies such as Federal Express and United Parcel Service, prescription labels for pharmacies, and labels found on shelves in retail stores. Plaintiff began his employment on the night shift, but moved to the day shift as soon as he became eligible (after one year of employment).

In July 1995, after plaintiff had been employed with defendant for seven years, defendant posted an opening for a building maintenance position and plaintiff applied for the position. The job posting for the building maintenance position sets forth two distinct categories of information about the position—"specific knowledge and skills required" and "specific duties and responsibilities." Welding is listed in the "specific

duties and responsibilities" section of the job posting. The posting also notes that the successful applicant will complete a 90–day training period for the position. Pat Flaherty, one of defendant's production managers, informed plaintiff that he was not selected for the position because he did not know how to weld and because defendant wanted to fill the position with someone who had continuous experience in the maintenance field.

In early 1996, defendant posted an opening for a graphic design production position. According to the posting, the position required a college degree in the field of graphics and a minimum of eight years experience in the graphics field. Plaintiff did not submit an application for the position because his education and experience did not meet the minimum requirements posted. In fact, no one applied for the position at the time it was initially posted. At some point later in the year, defendant selected an employee from its tooling room for the graphic design production position without posting the position again. The successful candidate did not have a college degree.

Defendant's selection of a tooling room employee for the graphic design production position resulted in an immediate opening for a tooling room technician. Defendant posted an opening for this position in July 1996 and plaintiff submitted an application. A panel of three persons interviewed plaintiff and the other candidates for the position. According to defendant, plaintiff was not selected for the position because the interview team determined that plaintiff had poor verbal communication skills, poor retention of the tooling process, low press knowledge, lack of self-dependence and would require a high degree of supervision and instruction. Bart Goodwin was selected for the position. According to the interview team, Mr. Goodwin displayed strong flexographic press knowledge, good verbal and written communication skills, previous tooling experience, good work habits, and a "highly energetic demeanor" about the position.

1. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

In October 1996, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission alleging national origin discrimination based on defendant's failure to promote plaintiff to several positions. Plaintiff received his notice of right to sue and, in June 1997, filed this lawsuit. According to plaintiff, defendant failed to promote him to a press operator position after plaintiff filed his lawsuit. Although he did not submit a formal application for a press operator position,[2] plaintiff informed several members of management of his desire for such a promotion. According to defendant, plaintiff was not qualified for a press operator position in any event because he failed to meet minimum baseline production standards as an assistant press operator.

On August 4, 1997, defendant terminated plaintiff's employment. Bob Armor, one of defendant's production managers, informed plaintiff that defendant decided to terminate his employment based on complaints from two employees about plaintiff's allegedly harassing behavior. One employee, Marci Randel, notified her supervisor, Pat Flaherty, that she felt "very uneasy" because plaintiff's statements to her were "increasingly becoming more personal." Another employee, Jarrod Johnson, complained to Bob Armor and Jennifer VanWagoner, defendant's Human Resources Manager, that plaintiff continued to bother him even though he told plaintiff to stop several times. Defendant did not interview plaintiff with respect to Ms. Randel's or Mr. Johnson's complaints prior to terminating his employment.

In January 1998, plaintiff filed another charge of discrimination with the Kansas Human Rights Commission. In this charge, plaintiff alleged that defendant terminated his employment in retaliation for the filing of his initial charge and subsequent lawsuit. Plaintiff also alleged that defendant failed to promote him based on his national origin.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affi-

---

2. Apparently, plaintiff is not complaining about the denial of a particular press operator position. It appears from the record that defendant filled numerous press operator positions in the relevant time frame.

davits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Plaintiff's Title VII, KAAD and § 1981 Claims

Plaintiff asserts two theories of recovery under Title VII, the KAAD and § 1981. First, plaintiff claims that defendant failed to promote him to four positions on the basis of his race and national origin.[3] Second, plaintiff alleges that defendant failed to promote him to a press operator position and terminated his employment in retaliation for his filing a charge of discrimination and this lawsuit.

#### A. *Exhaustion of Remedies*

As an initial matter, defendant moves for summary judgment on plaintiff's Title VII and KAAD claims to the extent plaintiff alleges discriminatory or retaliatory conduct based on race. According to defendant, plaintiff failed to exhaust his administrative remedies with respect to these claims because these claims were not included in his charge of discrimination. Defendant also moves for summary judgment on plaintiff's KAAD claims arising out of plaintiff's 1998 charge of discrimination for failure to exhaust administrative remedies with respect to that charge. For the reasons set forth below, defendant's motion is denied with respect to plaintiff's Title VII and KAAD race claims and granted with respect to plaintiff's KAAD claims arising out of plaintiff's 1998 charge of discrimination.

#### 1. Plaintiff's Title VII and KAAD Race Claims

■ The Tenth Circuit recognizes the rule that a complaint may include any claims of discrimination not listed in the administrative charge as long as such claims are "reasonably related" to the allegations in the charge. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997) (citing *Brown v. Hartshorne Pub. Sch. Dist. No. 1,* 864 F.2d 680, 682 (10th Cir.1988)). This rule is consistent with the purposes of the filing requirement—to provide notice of the alleged violation to the charged party, and to provide the administrative agency with the opportunity to conciliate the claims. *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir.1997) (citing *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126 (7th Cir.1989)).

In his 1996 charge of discrimination filed against defendant, plaintiff set forth the following allegations:

> I was hired by the above employer on August 12, 1988 as an Assistant Press Operator.

> I have been denied three promotions within the past 6 months, beginning June, 1996. The positions were Maintenance, Inspector and Tooling Room Technician. I met the requirements and qualification [sic] of the three positions.

> I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, by being denied three promotions because of my national origin, Iranian–American.

There are no other allegations in plaintiff's charge. In his 1998 charge of discrimination, plaintiff set forth the following allegations:

> The above-named employer repeatedly failed to promote me or to consider me for promotion based on my national origin.

> I filed a charge of discrimination (EEOC Charge # 281970037) against the employer and the charge was closed on March 4, 1997. I subsequently filed a discrimination lawsuit against the employer in federal court within the requisite 90–day period.

> On August 4, 1997, I was discharged from my employment by Bob Armor, Plant Engineer. Mr. Armor stated the reason for

---

**3.** Plaintiff's allegations in the pretrial order include reference to a fifth position, a production coordinator position. Defendant moved for summary judgment with respect to this position, and plaintiff abandoned the allegations in his papers. Thus, summary judgment is granted on plaintiff's failure-to-promote claim with respect to the production coordinator position.

my discharge was a complaint of sexual harassment that had been made against me.

I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, when the employer failed to promote me or consider me for promotion based on my national origin. I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because I was fired in retaliation for filing an EEOC charge and a lawsuit.

Again, there are no other allegations in plaintiff's charge.

■ Although plaintiff's charges of discrimination do not include any specific references to "race discrimination," the court concludes that, in the unique circumstances presented here, the purposes underlying the filing requirement—to provide notice of the alleged violation to the charged party, and to provide the administrative agency with the opportunity to conciliate the claim—have been satisfied with respect to claims of race discrimination. Although Title VII and the KAAD separate "national origin" and "race" into distinct protected categories, the line between national origin discrimination and race discrimination is often not clear. *See Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 614, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) ("[T]he line between discrimination based on 'ancestry or ethnic characteristics' and discrimination based on 'place or nation of . . . origin' is not a bright one.") (Brennan, J. concurring). *See also Aramburu v. Boeing Co.,* 112 F.3d 1398, 1411 n. 10

(10th Cir.1997) (claims of discrimination based on Mexican–American ancestry fall within § 1981's protection against racial discrimination). In light of plaintiff's particular claim (*i.e.,* discrimination based on Iranian ancestry and national origin), the court concludes that a discrimination claim based on race is "reasonably related" to the allegations of national origin discrimination in plaintiff's charges submitted to the KHRC and the EEOC. *See Tovar v. County of Alameda,* No. C 94–0261 SI, 1998 WL 196467, at *1 n. 1 (N.D.Cal. Apr.14, 1998) (court addressed merits of plaintiff's race claim because plaintiff's initial claim of national origin discrimination was reasonably related to claim of race discrimination); *Fraser v. New York City Bd. of Educ.,* No. 96–CIV–0625(SHS), 1998 WL 55170, at *3–4 (S.D.N.Y. Feb.10, 1998) (assuming without deciding that plaintiff's claim of race discrimination based on status as Hebrew Israelite was reasonably related to discrimination claims based on national origin, religion and color).[4] Moreover, an investigation of plaintiff's national origin claims would necessarily include an investigation into potential race claims where, as here, the alleged underlying conduct is the same for either claim. *See Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993) ("[C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."). For these reasons, defendant's motion for summary judgment on this issue is denied.[5]

---

4. See also *Maingi v. IBP, Inc.,* No. 93–3202, 1993 WL 425406, at *2 n. 1 (10th Cir.1993) (affirming district court's determination that plaintiff's claim for racial discrimination is a logical extension of his claim for national origin discrimination based on his Kenyan citizenship). The court recognizes that the citation of unpublished decisions by the Tenth Circuit remains unfavored. Nonetheless, the court finds the opinion relevant to its analysis of the issue.

5. Defendant urges that this court's opinion in *Freeman v. State of Kansas,* No. 97–2531–JWL, 1998 WL 259899 (D.Kan. Apr.10, 1998), mandates the conclusion that plaintiff's national origin claims are not "reasonably related" to claims of race discrimination. The court disagrees. In

*Freeman,* the court was presented with the reverse situation—an African–American plaintiff filed charges of discrimination based on her race. *Id.* at *4. The court determined that plaintiff's purported claims of national origin discrimination were not reasonably related to her claims of race discrimination. *Id.* at *5.

Unlike the situation presented here, plaintiff's "national origin" was simply not a logical extension of plaintiff's race, African–American. She did not allege that she was discriminated against because of any particular nation from which her African ancestry may have come and it did not appear there that the thrust of her allegations went beyond race. Here, where the thrust of plaintiff's allegations go to his being "Iranian–

## 2. Plaintiff's KAAD Claims

■ Defendant moves for summary judgment on plaintiff's KAAD claims on the grounds that plaintiff failed to exhaust his administrative remedies. Specifically, defendant alleges that plaintiff did not receive a notice of right to sue from the KHRC with respect to the charge plaintiff filed in 1998.[6] As set forth in more detail below, the court concludes that plaintiff has not sufficiently met his burden of establishing that he has adequately exhausted his administrative remedies with respect to his 1998 charge of discrimination. Accordingly, defendant's motion for summary judgment is granted. Plaintiff's KAAD claims arising out of his 1998 charge are dismissed.

■ It is well settled that an individual must exhaust his or her administrative remedies under the KAAD before seeking judicial relief. *See, e.g., Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997); *Gaddy ex rel. Gaddy v. Four B Corp.,* 953 F.Supp. 331, 334–35 (D.Kan.1997) (citing *Van Scoyk v. St. Mary's Assumption Parochial Sch.,* 224 Kan. 304, 306, 580 P.2d 1315 (1978)); *Butler v. Capitol Fed. Sav.,* 904 F.Supp. 1230, 1234 (D.Kan.1995) (same). Moreover, plaintiff bears the burden of establishing that he has exhausted his administrative remedies. *Young v. Desco Coatings, Inc.,* 179 F.R.D. 610, 613 (D.Kan.1998) (citing *Morris v. Kansas Dep't of Revenue,* 849 F.Supp. 1421, 1427 (D.Kan.1994)).

Plaintiff dual-filed his 1998 charge of discrimination with the EEOC and the KHRC. Although the EEOC issued plaintiff a notice of right to sue approximately one week later,

plaintiff has not alleged that he has received a notice of right to sue from the KHRC and has not set forth any evidence or arguments that he should be otherwise excused from this requirement. *See Gaddy ex rel. Gaddy,* 953 F.Supp. at 331 n. 6 (evidence of a worksharing agreement between the EEOC and the KHRC "could lay to rest issues of exhaustion") (citing *Morris,* 849 F.Supp. at 1428). Accordingly, defendant's motion for summary judgment with respect to plaintiff's KAAD claims for failure to exhaust administrative remedies is granted. *See Young,* 179 F.R.D. at 613 (dismissing KAAD claim where plaintiff failed to plead exhaustion of remedies). *See also Butler,* 904 F.Supp. at 1234 (dismissing plaintiff's KAAD claim where charge was still pending before Commission); *Davidson v. MAC Equip., Inc.,* 878 F.Supp. 186, 189 (D.Kan.1995) (dismissing plaintiff's KAAD claim where plaintiff's charge was still pending before Commission). The court now turns to address whether plaintiff has met his summary judgment burden with respect to his Title VII claims, his remaining KAAD claims, and his § 1981 race claims.

### B. Discriminatory Failure to Promote

■ Plaintiff claims that defendant failed to promote him to four positions based on his race and national origin in violation of Title VII, the KAAD and § 1981.[7] The court analyzes plaintiff's discriminatory failure-to-promote claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[8] In the summary judgment context,

American," they logically comprise both plaintiff's country of origin and racial group.

In any event, the court is puzzled by defendant's motion on this issue. Regardless of whether plaintiff's Title VII and KAAD race claims survive, plaintiff is left with a viable race claim under § 1981. Moreover, plaintiff is left with viable Title VII and KAAD national origin claims. Thus, either way, the resolution of this issue has no practical ramifications at trial.

6. Initially, defendant also moved for summary judgment on plaintiff's KAAD claims for failure to exhaust administrative remedies with respect to plaintiff's 1996 charge of discrimination. In its reply, presumably after reviewing plaintiff's

papers, defendant focuses only on plaintiff's 1998 charge of discrimination. The court interprets defendant's reply as a concession that plaintiff properly exhausted his remedies with respect to his 1996 charge of discrimination.

7. Because § 1981 does not protect individuals from discrimination based on national origin, *see Aramburu v. Boeing Co.,* 112 F.3d 1398, 1411 n. 10 (10th Cir.1997), plaintiff's § 1981 claims are based solely on race.

8. The court applies the same standards and burdens to plaintiff's § 1981 and KAAD claims as applied to his Title VII claims. *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir. 1997).

plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

██ To establish a prima facie case in the failure-to-promote context, plaintiff must show that there were promotional opportunities available that were filled by persons outside the protected class; that he was qualified for promotion; and that despite his qualifications he was not promoted. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1362 (10th Cir.1997). Plaintiff must also establish that he applied for the position in question. *See Bauer v. Bailar*, 647 F.2d 1037, 1044 (10th Cir.1981) (plaintiff "must prove that she applied for an available position for which she was qualified" in order to establish prima facie case) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Montgomery v. Card*, 794 F.Supp. 1066, 1067 (D.Kan.1992) (same). The law does not require, however, "that a plaintiff

formally apply for the job in question." *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir.1992). Rather, "the law requires either that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Id.* (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980)).

1. Building Maintenance Position [9]

██ Defendant maintains that plaintiff cannot state a prima facie case of discriminatory failure-to-promote with respect to the building maintenance position because plaintiff did not have the minimum qualifications for the position. Specifically, defendant argues that plaintiff was not qualified for the position because he cannot weld. Although plaintiff concedes he cannot weld, plaintiff urges that the ability to weld was simply not required to qualify for the position. As set forth below, a reasonable factfinder could conclude that welding was not a required qualification for the building maintenance position and that plaintiff was qualified for the position. Thus, summary judgment is denied with respect to this claim.[10]

As plaintiff emphasizes, the job posting for the building maintenance position sets forth two distinct categories of information about the position—"specific knowledge and skills required" and "specific duties and responsibilities." Welding is not listed in the "specific knowledge and skills required" section of the posting, and defendant does not address whether plaintiff met the qualifications set forth in this section. Rather, "welding" is

---

9. In its papers, defendant maintains that summary judgment is appropriate with respect to "any claims ... that arose prior to November 1995" based on plaintiff's voluntary dismissal of an earlier lawsuit. Regardless of the merits of defendant's argument, defendant has failed to identify for the court which claims arose prior to November 1995. Plaintiff's claim with respect to the building maintenance position, posted in July 1995, may have arisen prior to November 1995. The record is devoid of any evidence, however, with respect to when the position was filled and

defendant does not specifically suggest that this claim is barred. In the absence of any evidence to support defendant's argument, defendant's motion for summary judgment on this issue must be denied.

10. In its papers, defendant has moved for summary judgment based only on plaintiff's inability to establish a prima facie case. Thus, the court need not address whether plaintiff sufficiently met his pretext burden.

cited in the "specific duties and responsibilities" section of the job posting.[11] Moreover, the posting notes that the successful applicant will receive a 90–day training period for the position. In such circumstances, the court believes that a genuine issue of material fact exists with respect to whether welding was a required qualification for the building maintenance position and, if not, whether plaintiff was qualified for the position. *See Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir.1996) (plaintiff established her qualifications for purposes of prima facie case by proving that she met the listed qualifications and was capable of being trained to meet any unlisted qualifications). Defendant's motion for summary judgment is denied with respect to this claim.

### 2. Graphic Production Position

█ According to defendant, plaintiff cannot state a prima facie case with respect to the graphic production position because he did not apply for the position and concedes that he was not qualified for the position. As set forth below, the court agrees with defendant that plaintiff has failed to establish a prima facie case of discriminatory failure-to-promote with respect to the graphic production position.

In his papers, plaintiff concedes that the graphic production position required a college degree in the field of graphics and a minimum of eight years experience in the graphics area. Plaintiff further concedes that he did not submit an application for the graphic production position because his education and experience did not meet the minimum requirements as posted by defendant. In fact, no one applied for the position at the time it was posted. At some point later in the year, defendant awarded the position (apparently without posting it again) to an individual who did not possess a college degree.

Plaintiff's failure-to-promote claim with respect to the graphic production position fails. Plaintiff unequivocally states that he did not submit an application for the position. Although the law does not require plaintiff to formally apply for the position, it does re-

quire that defendant "be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir.1992) (citing *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984); *Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1017 (2d Cir. 1980)). Here, plaintiff has failed to set forth any evidence that defendant had specific notice that he was interested in the graphic production position or that plaintiff was in a group of people who might reasonably be interested in the position. In the absence of such evidence, and in light of plaintiff's concession that he did not submit an application for the position, plaintiff simply cannot establish a prima facie case of discriminatory failure-to-promote. Defendant's motion for summary judgment is granted with respect to this position.

### 3. Tooling Room Technician Position

█ For purposes of its motion, defendant concedes that plaintiff has adequately established his prima facie case with respect to the tooling room technician position. Moreover, defendant has set forth legitimate, nondiscriminatory reasons for selecting another candidate for the position. As set forth below, however, plaintiff has come forward with sufficient evidence that defendant failed to promote plaintiff to this position under circumstances giving rise to an inference of discrimination. Because the court concludes that a genuine issue of material fact exists with respect to whether defendant failed to promote plaintiff to the tooling room technician position at least in part because of plaintiff's race or national origin, defendant's motion for summary judgment must be denied.

According to defendant, Bart Goodwin was selected for the tooling room technician position because a three-member interviewing panel determined that Mr. Goodwin had strong flexographic press knowledge; good verbal and written communication skills;

---

11. The relevant portion of the posting reads as follows: "Build structures from wood, metal and other materials using hand tools, power tools, welding and fabricating techniques."

previous tooling experience; a strong desire to learn; good work habits; and a "highly energetic demeanor towards [the] position." Moreover, according to defendant, plaintiff was not selected for the position because the interview team determined that he had poor verbal communication skills; poor retention of the tooling process; minimal press knowledge; a lack of self-dependence and would require a high degree of supervision and instruction.

According to plaintiff, the conclusions drawn by the interviewing panel are simply not supported by facts. First, plaintiff testified that his interview for the position lasted only three to four minutes. Moreover, the interviewing panel did not ask plaintiff any questions about his press knowledge. In fact, both three months before and after his interview, plaintiff's immediate supervisor rated plaintiff's job knowledge as exceeding company expectations.[12] Plaintiff also highlights that the interviewing panel criticized his "poor verbal communications skills" while noting that he "provided good answers to [the] questions" posed in the interview. Finally, and perhaps most significantly, plaintiff testified that Eric Hansen, the most senior member of the interviewing panel, "constantly" made comments about plaintiff's national origin. Mr. Hansen was a member of the Naval Reserves and was called into active duty twice during the Gulf War. According to plaintiff, Mr. Hansen repeatedly asked plaintiff, "How is your Uncle Saddam [Hussein]?" and would tell plaintiff "We are going to get your uncle." [13] Although these comments may not have occurred contemporaneously with the promotion decision, a permissible inference from this evidence is that Mr. Hansen had prematurely and unfairly prejudged plaintiff solely on the basis of his Iranian descent or national origin. *See Tomsic v. State Farm Mut. Auto. Ins. Co.,* 85 F.3d 1472, 1478 (10th Cir.1996) (sufficient showing of pretext made where arguably gender-biased remarks were directed at plaintiffs individually and were made by individual with input into termination decision).

In sum, the court concludes that plaintiff has set forth sufficient evidence from which a reasonable jury could infer that defendant's failure to promote him to the tooling room technician position was based, at least in part, on his race or national origin. *See Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995) (plaintiff does not need to prove that discriminatory factor was the "sole motivating factor in the employment decision").[14]

### 4. Press Operator Position [15]

Finally, defendant moves for summary judgment with respect to plaintiff's claim

**12.** There is no evidence in the record that the interviewing panel consulted other records or individuals in the selection process.

**13.** The court recognizes that Saddam Hussein is Iraqi rather than Iranian. Nonetheless, an inference could be drawn that Mr. Hansen either did not recognize the distinction or harbored a bias towards plaintiff based on his ancestral ties to the Persian Gulf region.

**14.** Defendant suggests that plaintiff's failure to come forward with evidence refuting Mr. Goodwin's qualifications mandates summary judgment in its favor. The court disagrees. Significantly, the only evidence in the record concerning Mr. Goodwin's purported qualifications consists of notes from the members of the interviewing panel. The conclusions drawn by the panel are not, in this record, supported by affidavit or deposition testimony, or any documents which would reflect the accuracy or nonpretextual nature of the conclusions drawn. If defendant had provided such evidence, the court would likely have required plaintiff to come forward with evidence refuting Mr. Goodwin's qualifications. Without such evidence, however, the court is left with only the conclusions of the interviewing panel—conclusions which have already been called into question by plaintiff.

**15.** As an initial matter, defendant argues that plaintiff omitted from the pretrial order any specific allegations with respect to this position and, thus, has waived his claim that defendant failed to promote him to the press operator position. The court is not persuaded.

It is well recognized that an order entered pursuant to Federal Rule of Civil Procedure 16(e) "supersedes the pleadings and controls the subsequent course of litigation." *See Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir.1997) (citing *Hullman v. Board of Trustees,* 950 F.2d 665, 668 (10th Cir.1991) ("[T]he pretrial order 'measures the dimensions of the lawsuit, both in the trial court and on appeal.'")). In light of this principle, this court, on numerous occasions,

that defendant failed to promote him to the press operator position based on his national origin and race. Specifically, defendant argues that plaintiff cannot state a prima facie case and, in any event, plaintiff cannot show that defendant's legitimate, nondiscriminatory reason for not promoting plaintiff was a mere pretext for intentional discrimination. As set forth below, the court agrees with defendant that plaintiff has not set forth sufficient evidence from which a reasonable factfinder could conclude that defendant's proffered explanation for its decision was unworthy of credence. Thus, summary judgment is appropriate in favor of defendant with respect to this claim.

As an initial matter, defendant contends that plaintiff cannot establish his prima facie case because plaintiff did not apply for a press operator position pursuant to defendant's bidding procedure. Plaintiff, however, has presented evidence that defendant did not utilize a bidding procedure when it filled the vast majority of press operator positions and, instead, routinely selected individuals for such positions without posting the positions. Moreover, plaintiff averred that he, consistent with what he described as defendant's practice, notified several members of management of his desire to be considered for promotion to a press operator position. Based on this evidence, the court concludes that plaintiff has adequately established his prima facie case. See Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir.1992) (when informal hiring procedures are used, plaintiff need not formally apply for position if plaintiff is in the group of people who might reasonably be interested in the particular job).

Nonetheless, plaintiff has failed to come forward with sufficient evidence from which a reasonable factfinder could infer that defendant's proffered reason for not promoting plaintiff was a mere pretext for intentional discrimination. In support of its motion, defendant asserts that plaintiff's performance · as an assistant press operator failed to meet minimum production standards. In support of his pretext analysis, plaintiff first challenges the basis for defendant's assertion. According to plaintiff, defendant's assertion that plaintiff failed to meet minimum production standards is based only on data representing plaintiff's first and second unsupervised endeavors at running a press. Moreover, plaintiff claims that defendant unfairly compares this data to the average productivity of "seasoned and experienced" press operators. The mere fact that defendant misinterpreted plaintiff's production figures or failed to consider plaintiff's relative inexperience in assessing his qualifications does not render its proffered reason pretextual and such evidence cannot support an inference of pretext.[16] As the Tenth Circuit has recognized, pretext "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1535 (10th Cir. 1995) (an employer's exercise of erroneous or illogical business judgment does not constitute pretext). A true motivating reason "is not converted into pretext merely because,

---

has refused to address certain issues not raised in the pretrial order. See, e.g., Long v. City of Leawood, 6 F.Supp.2d 1249, 1252 n. 3 (D.Kan. 1998) (any claim based on alleged "record" of impairment under ADA deemed waived); Tran v. Standard Motor Prods., Inc., 10 F.Supp.2d 1199, 1212 n. 19 (D.Kan.1998) (any potential claim under Kansas right-to-work amendment deemed waived); Zinn v. McKune, 949 F.Supp. 1530, 1534 (D.Kan.1996) (defense based on plaintiff's alleged failure to exhaust administrative remedies waived), aff'd, 143 F.3d 1353 (10th Cir. 1998). In each of those cases, a party neglected to preserve either a separate theory of liability or a defense which would preclude liability. Thus, if plaintiff here had omitted his failure-to-promote theory from the pretrial order, the court would have deemed these claims waived. By merely omitting a specific position encompassed in his failure-to-promote theory of liability, plaintiff has not waived his claims under all of the circumstances of this case and in the absence of any showing of prejudice by defendant in connection with its ability to defend against the specifics of the claims.

16. In further support of this argument, plaintiff suggests that defendant does not require all assistant press operators to meet minimum production standards when operating a press. Even if plaintiff's assertion is accurate, this fact does not address the issue here—whether defendant requires an assistant press operator to meet certain standards in order to be eligible for promotion.

with the benefit of hindsight, it turned out to be poor business judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998).

Plaintiff next claims that defendant promoted white, American assistant press operators to press operator positions even though these individuals did not meet minimum production standards and had performance evaluations "significantly inferior" to plaintiff's evaluations during the same time period. Although this argument appears compelling on its face, plaintiff fails to support his assertion with competent evidence under Rule 56(e). *See* Fed.R.Civ.P. 56(e); *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998) (in summary judgment context, facts "from which a rational trier of fact could find for the nonmovant … must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein"). In support of his assertion, plaintiff refers the court only to "Exhibit W." Exhibit W is a collection of charts purporting to be "productivity guidelines," "status reports" with respect to the performance of numerous employees, and various other documents regarding the productivity and performance of various employees. Plaintiff, however, has failed to authenticate the docu-

ments through a supporting affidavit or deposition from anyone with personal knowledge of the facts contained in the exhibits. *See* Fed.R.Civ.P. 56(c) & (e); D. Kan. Rule 56.1.[17]

Finally, plaintiff asserts that he was subjected to slurs, comments and actions based on his national origin and race over the course of his employment with defendant. According to plaintiff, such evidence is sufficient to create a triable issue of pretext. The court disagrees.[18] In support of plaintiff's assertion, he argues that four individuals who held supervisory positions and participated in promotion decisions—Jim Calovich, Eric Hansen, Gerald Segura and Chris Billings—made inappropriate comments about plaintiff's national origin. According to plaintiff, Mr. Calovich, apparently upset about a locker he and plaintiff had been sharing, referred to plaintiff on one occasion as a "mother fucker, fucked-up Iranian." Mr. Hansen, on numerous occasions, questioned plaintiff about his "Uncle Saddam Hussein" after returning from the Gulf War. Finally, on one occasion in February 1993, Mr. Segura approached plaintiff in the workplace and began badgering him to "go back to Iran."[19] These isolated comments are in-

---

**17.** Even if these documents were properly authenticated, the court could not decipher the information contained therein without the assistance of affidavit or deposition testimony explaining the significance of the information. Thus, even if the documents were properly before the court, there are no discernable inferences to be drawn in plaintiff's favor from them.

**18.** In support of this assertion, plaintiff relies on this court's decision in *Berry v. General Motors Corp.*, 796 F.Supp. 1409 (D.Kan.1992). Plaintiff's case, however, is distinguishable. In *Berry*, seven plaintiffs sued GM alleging, *inter alia*, race discrimination and retaliation under Title VII and § 1981 in connection with the downsizing of GM's Fairfax plant and transfers to the GM–10 plant. *Id.* at 1412–13. In response to GM's motion for summary judgment, the plaintiffs introduced evidence that members of GM's management repeatedly made racial slurs and comments in the work place over a period of more than ten years. *Id.* at 1421. Denying GM's motion, the court held that "[r]acially biased comments such as these, especially when made *continuously over a period of years*, are sufficient to create a triable issue of pretext." *Id.* (emphasis added).

As described in more detail in the court's opinion here, despite plaintiff's bare allegation, he has not set forth evidence of repeated comments occurring continuously throughout the course of his eight-year employment. Rather, plaintiff has directed the court to comments made by three individuals. To the extent such comments were made by an individual involved in employment decisions concerning plaintiff, the comments are significant (*e.g.*, Mr. Hansen's comments were sufficient to create an inference of pretext with respect to the tooling room position because Mr. Hansen was a member of the interviewing team). Plaintiff has provided no evidence, however, that such comments pervaded the workplace.

**19.** According to plaintiff, the incident with Mr. Segura began earlier that day when plaintiff witnessed Mr. Segura letting the air out of the tires of plaintiff's car. After Mr. Segura's comments in the workplace later that day, the situation escalated. Mr. Segura allegedly retrieved a pair of scissors from a nearby desk and threatened to kill plaintiff. Notwithstanding plaintiff's version of the events, plaintiff received a written warning for threatening to grab Mr. Segura's "private area."

sufficient to support an inference of pretext. Although plaintiff asserts that these individuals "participated in promotion decisions," there is simply no evidence in the record that any of these individuals played a part in filling any of the press operator positions plaintiff desired.[20] Moreover, there is no evidence that these individuals were even aware that plaintiff was interested in a press operator position.[21] In the absence of any nexus between these individuals and the promotion decisions in question, these isolated comments cannot support an inference of pretext. *See Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (stray remarks, unrelated to the challenged action, are "insufficient to create a jury issue").

In short, there is simply no evidence in the record to suggest that defendant's proffered reason for failing to promote plaintiff to a press operator position was unworthy of belief or that plaintiff's race or national origin played any part in defendant's decision. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's failure-to-promote claim with respect to the press operator position.

### C. Retaliation

Plaintiff also claims that defendant failed to promote him to a press operator position and terminated his employment in retaliation for his filing a charge of discrimination and this lawsuit. The court analyzes plaintiff's retaliation claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996). Plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity; (2) he suffered an adverse employment action either after or contempo-

raneous with his protected activity; and (3) a causal connection exists between his protected activity and the adverse employment action. *Id.* (citing *Love,* 738 F.2d at 385 (citing *Burrus v. United Tel. Co.,* 683 F.2d 339, 343 (10th Cir.1982))). Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nonretaliatory reason for its employment decisions. *Id.* at 986 (citing *Love,* 738 F.2d at 385 (citing *Burrus,* 683 F.2d at 343)). If the defendant comes forward with a legitimate, nonretaliatory reason for its action, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual. *Id.; see Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1396–97 (10th Cir.1997) (rejecting argument that, in retaliation cases, the establishment of a prima facie case is necessarily sufficient to survive summary judgment; defendant is entitled to summary judgment unless plaintiff produces evidence that defendant's proffered reason for action taken is pretextual).

Defendant concedes that plaintiff has demonstrated the first and second elements of his prima facie case. Defendant insists, however, that plaintiff cannot show a "causal connection" between the filing of his charge or his lawsuit and defendant's failure to promote him to a press operator position or its decision to terminate plaintiff's employment. Defendant further argues that plaintiff cannot establish that defendant's proffered nonretaliatory reasons for its employment decisions were pretextual. For the reasons set forth below, the court grants defendant's motion for summary judgment with respect to plaintiff's retaliatory failure-to-promote claim and denies defendant's motion for summary judgment with respect to plaintiff's retaliatory discharge claim.

---

20. According to plaintiff, Mr. Segura's employment was terminated "less than two years" after the February 1993 incident. Thus, it is clear that Mr. Segura played no part in whether plaintiff received a promotion to a press operator position.

21. Plaintiff did notify Chris Billings, along with several other members of management, that he was interested in a press operator position. Although Mr. Billings admitted he had told a racial or ethnic joke or made a racial or ethnic slur in the workplace, there is no evidence from either party that Mr. Billings ever made any derogatory comments about Iranians.

### 1. The "Causal Connection" Element

In order to establish a causal connection between his protected activity and defendant's adverse employment decisions, "plaintiff must show that the individual who took adverse action against him knew of [plaintiff's] protected activity." *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993) (citing *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 635 (10th Cir.1988)); *Douglas v. General Motors Corp.*, 982 F.Supp. 1448, 1452 (D.Kan.1997) (citing *Williams*, 983 F.2d at 181). With respect to his retaliatory failure-to-promote claim, plaintiff has failed to produce any evidence regarding the identity of the relevant decisionmakers, much less that the decisionmakers were aware of plaintiff's protected activity. Plaintiff alleges only that Chris Billings, Eric Hansen, Jim Calovich and Gerald Segura "participated in promotion decisions." There is no evidence in the record, nor does plaintiff suggest, that any of these individuals participated in the decision at issue or that any of these individuals were aware of plaintiff's protected activity. In the absence of such evidence, no reasonable jury could conclude that defendant failed to promote plaintiff in retaliation for engaging in protected activity. *See Williams*, 983 F.2d at 181 (affirming grant of summary judgment on retaliation claim where plaintiff failed to provide any evidence that decisionmaker knew of complaints). *See also Didde v. Unified Sch. Dist. No. 207*, 12 F.Supp.2d 1219, 1224–25 (D.Kan.1998) (no reasonable jury could find causal connection existed where decisionmakers did not know of plaintiff's EEOC complaint at time of employment decision); *Carney v. Pena*, 992 F.Supp. 1285, 1292–93 (D.Kan.1998) (summary judgment granted on retaliation claim where none of decisionmakers were aware of protected activity). Thus, defendant's summary judgment motion is granted with respect to plaintiff's retaliatory failure-to-promote claim.[22]

With respect to his retaliatory discharge claim, the court concludes that plaintiff has set forth sufficient evidence from which a reasonable factfinder could conclude that the individuals involved in the decision to terminate plaintiff's employment were aware of plaintiff's filing his EEOC charge, his lawsuit, or both. In its response to plaintiff's interrogatories, defendant identified Jennifer Van Wagoner, Pat Flaherty and Bob Armor as the decisionmakers involved in plaintiff's discharge. Ms. Van Wagoner testified in her deposition that she remembered receiving a request from either the EEOC or the Kansas Human Rights Commission asking defendant to respond to a charge of discrimination filed by plaintiff "about not receiving a promotion or something of that sort." Although Ms. Van Wagoner does not remember when she received the request, the court concludes that Ms. Van Wagoner's testimony is sufficient such that a jury should decide whether the decisionmakers actually knew that plaintiff had filed an EEOC charge. *See Godinet v. Management & Training Corp.*, 994 F.Supp. 1348, 1355–56 (D.Kan.1998) (although plaintiff failed to present direct evidence that defendant knew of his intention to file an EEOC charge, plaintiff presented sufficient indirect evidence for the jury to decide whether defendant knew of plaintiff's intent to file charge). Moreover, plaintiff testified that he informed several of his coworkers that he had filed a lawsuit against defendant and, shortly thereafter, "rumors" about his lawsuit were heard throughout the plant. According to plaintiff, "everybody" at the plant, including management, knew that he had filed a lawsuit. Drawing all inferences in the light most favorable to plaintiff, plaintiff's testimony is sufficient to raise a genuine issue of material fact with respect to whether the individuals involved in the decision to terminate plaintiff's employment knew that he had filed a lawsuit.

Defendant's mere knowledge of plaintiff's protected activity, however, without more, does not create an inference of unlawful retaliation. Plaintiff must still establish the causation element of his prima facie case. Although the Tenth Circuit has held that protected conduct closely followed by adverse action may support an inference for retaliato-

---

**22.** In any event, plaintiff does not even address his retaliatory failure-to-promote claim in his pa-

pers. Thus, plaintiff may have abandoned this claim.

ry motive, *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.1996), the circuit has underscored since *Marx* that unless the employer's adverse action "is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

Defendant terminated plaintiff's employment approximately six weeks after he filed his lawsuit. A reasonable jury could infer, however, that management did not learn about plaintiff's lawsuit until some period of time after plaintiff filed the suit. Thus, the period of time between management's knowledge of plaintiff's protected activity and plaintiff's discharge could be less than six weeks. In any event, the temporal proximity between the two events is close enough that a reasonable jury could infer a causal connection existed. *See Newell v. KMart Corp.*, No. CIV.A.97–2258–KHV, 1998 WL 230966, at *4 (D.Kan. Apr.6, 1998) (four-week period between protected activity and termination sufficient to support causation element); *Rettiger v. IBP, Inc.*, 980 F.Supp. 1182, 1191 (D.Kan.1997) (temporal proximity between protected activity and discharge close enough that reasonable jury could infer causal connection where employer discharged plaintiff less than six weeks after plaintiff lodged complaint of sexual harassment); *Bowers v. Bethany Medical Center*, 959 F.Supp. 1385, 1392 (D.Kan.1997) (plaintiff's discharge within three weeks of her return from disability leave sufficient to satisfy causal connection element of prima facie case).

### 2. The Pretext Analysis

■ The court also finds that plaintiff has set forth sufficient evidence from which a reasonable jury could infer that defendant's proffered nonretaliatory reasons for plaintiff's discharge are pretextual. According to defendant, plaintiff's employment was terminated based on complaints from two employees about plaintiff's allegedly harassing behavior. One employee, Marci Randel, notified her supervisor that she felt "very uneasy" because plaintiff's statements to her

were "increasingly becoming more personal." Another employee, Jarrod Johnson, complained to Bob Armor and Jennifer VanWagoner that plaintiff continued to bother him even though he told plaintiff to stop several times.

In an attempt to show that defendant's proffered reasons for terminating his employment are pretextual, plaintiff introduced evidence that other employees were not discharged for similar violations. Specifically, plaintiff asserts that employees Gary Mitchum and Carl Fue received mere written warnings despite complaints from coworkers about these employees making inappropriate comments—at least some of which were sexual in nature. The Tenth Circuit has recognized that evidence that plaintiff was treated differently than other similarly situated employees who violated work rules of comparable seriousness can support an inference of discrimination. *See Elmore v. Capstan, Inc.*, 58 F.3d 525, 530–31 (10th Cir.1995).

According to defendant, plaintiff's comparison to Messrs. Mitchum and Fue is insufficient to support an inference of pretext because these employees were not involved in two contemporaneous incidents of harassment and, thus, are not "similarly situated" to plaintiff. The court is not persuaded. Plaintiff's evidence shows that these employees received more lenient treatment than plaintiff for violations of comparable seriousness—harassment of co-workers. Moreover, given the nature of the alleged violation—workplace harassment—it is reasonable to infer that all of defendant's employees were subjected to similar standards. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404–05 (10th Cir.1997) ("Similarly situated employees are those who … are subject to the same standards governing performance and discipline."). In such circumstances, a jury should decide whether defendant's motive in discharging plaintiff was retaliatory.

Plaintiff also highlights defendant's failure to interview plaintiff with respect to the complaints of Ms. Randel and Mr. Johnson prior to terminating his employment. In this regard, two of the individuals identified by defendant as decisionmakers in plaintiff's discharge admitted that their practice was to

interview employees accused of inappropriate behavior in the workplace prior to taking disciplinary action. Mr. Armor testified that he would have interviewed plaintiff before deciding whether to terminate his employment. Similarly, Ms. Van Wagoner testified to her belief that talking with an employee against whom allegations are made is an important part of the investigative process. Moreover, Barbara Messick, defendant's corporate representative, testified that allowing an employee to tell his or her side of the story before taking disciplinary action is vital and that a failure to do so violates defendant's "Commitment to Fairness" policy. As defendant notes, Ms. Messick did not begin her employment with defendant until three months after plaintiff's discharge. Nonetheless, in light of the testimony of Mr. Armor and Ms. Van Wagoner, a reasonable jury could conclude that defendant's standard practice is to interview employees accused of harassment and that a departure from that practice with respect to plaintiff is sufficient to support an inference of pretext.

Plaintiff also suggests that defendant's proffered reasons are pretextual because the February 1993 incident with Gerald Segura, *see supra* note 19, played a part in defendant's decision to terminate plaintiff's employment even though the written warning was supposed to be removed from plaintiff's personnel file and returned to plaintiff two years after the incident. Coupled with plaintiff's other pretext evidence, a reasonable inference can be drawn that defendant's purported reliance, at least in part, on an incident which occurred more than four years earlier is pretextual.

In short, plaintiff has produced sufficient evidence to cast doubt on defendant's proffered reasons for terminating his employment. Defendant's motion for summary judgment on plaintiff's retaliatory discharge claim is denied.[23]

---

**23.** According to defendant, certain admissions of plaintiff "belie his retaliation claim" and support summary judgment in its favor. Specifically, plaintiff admits that he filed at least four workers' compensation claims, an OSHA complaint, two discrimination charges and one other law-

## IV. Plaintiff's COBRA Claim

■ Plaintiff also claims that defendant violated the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161–1168, by failing to provide him timely notice of his entitlement to elect continuation health care coverage upon his termination from employment. Defendant contends that it notified plaintiff of his COBRA rights during his termination meeting and, in any event, plaintiff's claim fails because he concedes that he eventually received notification. As set forth below, defendant has not met its burden that adequate COBRA notice was given. Accordingly, summary judgment is denied on plaintiff's COBRA claim.

COBRA requires employers, if a qualifying event occurs, to provide former employees the opportunity to continue health care coverage under the employer's plan at the former employee's expense. 29 U.S.C. § 1161; *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir.1997). Qualifying events include termination of employment for any reason other than gross misconduct. 29 U.S.C. § 1163. When a qualifying event occurs, the employer must notify the plan administrator of the qualifying event within thirty days of the event. *Id.* § 1166(a). The plan administrator is responsible for notifying beneficiaries of their right to receive continuation coverage within fourteen days after it receives notice of the qualifying event. *Id.* § 1166(a) & (c). The Tenth Circuit has held that, in an action for benefits under COBRA, the plan administrator bears the burden of proving that adequate COBRA notice was given. *Rogers Galvanizing*, 128 F.3d at 1383 (citing *Stanton v. Larry Fowler Trucking, Inc.*, 52 F.3d 723, 728–29 (8th Cir. 1995)).

Here, because defendant has not suggested otherwise, the court assumes that defendant was both the sponsor and the administrator of the insurance plan. Thus, it was defendant's duty under COBRA to timely

suit during his last few years of employment without suffering any adverse action. Such evidence, however, cuts both ways. Another reasonable inference to be drawn is that plaintiff's lawsuit was the "final straw" that triggered his discharge.

notify plaintiff that he could elect continuation coverage.[24] Although defendant maintains that proper notification was given to plaintiff on the day of his discharge, plaintiff alleges that he did not receive notice until January 15, 1998—more than five months after his discharge.

Although COBRA contains no specific requirements as to the manner in which notice must be given, the Tenth Circuit has recognized that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Rogers Galvanizing*, 128 F.3d at 1383–84. The vast majority of courts adopting this "good faith" standard share the view that COBRA compliance does not require proof that the former employee actually received notice. *See, e.g., Keegan v. Bloomingdale's, Inc.*, 992 F.Supp. 974, 977–78 (N.D.Ill.1998); *Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771, 783 (S.D.Miss. 1992) (*cited with approval in Rogers Galvanizing*); *Myers v. King's Daughters Clinic*, 912 F.Supp. 233, 236 (W.D.Tex.1996); *Jachim v. KUTV Inc.*, 783 F.Supp. 1328, 1333 (D.Utah 1992) (*cited with approval in Rogers Galvanizing*). Thus, courts have routinely granted summary judgment in favor of employers (or plan administrators) despite an employee's claim that he or she did not receive notice if the employer (or plan administrator) sets forth sufficient proof that it made a good faith effort to comply with the COBRA notice requirements. *See, e.g., Southern Maryland Hosp. Center v. Corley*, 6 F.Supp.2d 461, 466 (D.Md.1998) (summary judgment granted despite employee's claim that he never received notice where employer produced records indicating that notification was mailed and produced photocopy of postmarked envelope addressed to employee at proper address); *Shafrir v. Association of Reform Zionists of Am.*, 998 F.Supp. 355, 364 (S.D.N.Y.1998) (summary judgment granted despite claim of no receipt where defendant's personnel administrator signed two sworn affidavits that she sent plaintiff COBRA notification).

Here, however, defendant has failed to produce any evidence that it made a good faith attempt to comply with the notification requirements of COBRA. Specifically, there is no evidence in the record with respect to defendant's standard notification practices or with respect to defendant's notification of plaintiff himself. Defendant simply asserts in conclusory fashion that it notified plaintiff of his COBRA rights during his termination meeting. *Cf. Keegan*, 992 F.Supp. at 979–80 (summary judgment granted despite claim of no receipt where administrator introduced evidence of standard automated procedure for generating COBRA letters and produced copy of letter in question produced through procedure); *Roberts v. National Health Corp.*, 963 F.Supp. 512, 514–15 (D.S.C.1997) (summary judgment granted despite claim of no receipt where employer/plan administrator showed it used a reliable system of notification, had business records indicating letter was sent to plaintiff and had report date-stamped on day letter was mailed), *aff'd*, 133 F.3d 916 (4th Cir.1998). In the absence of such evidence, the court must deny defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 60) is **granted in part and denied in part.** Specifically, defendant's motion is granted on plaintiff's KAAD claims to the extent such claims are raised in plaintiff's 1998 charge of discrimination; plaintiff's failure-to-promote claims with respect to the production coordinator position, the graphic design production position and press operator position; and plaintiff's retaliatory failure-to-promote claim. These claims are dismissed in their entirety. Defendant's motion for summary judgment is **denied** with respect to plaintiff's Title VII and KAAD claims to the extent such claims allege race discrimination; plaintiff's failure-to-promote claims with respect to the build-

---

**24.** Courts are split on whether an employer who is also a plan administrator has fourteen days or forty-four days to notify a beneficiary. *See Roberts v. National Health Corp.*, 963 F.Supp. 512, 515 (D.S.C.1997), *aff'd*, 133 F.3d 916 (4th Cir. 1998) (discussing cases and noting conflict).

Resolution of this issue is not necessary for purposes of analyzing defendant's motion and the parties have not asked the court to resolve it. Presumably, however, the issue would bear on the damages aspect of plaintiff's claim.

ing maintenance position and the tooling room technician position; plaintiff's retaliatory discharge claim; and plaintiff's COBRA claim.

**IT IS SO ORDERED.**