Victor A. STEPHENS, Plaintiff,

v.

CITY OF TOPEKA, KANSAS and its Agency the City of Topeka Housing Authority, Defendants.

No. Civ.A. 97–2527–GLR.

United States District Court, D. Kansas.

Jan. 15, 1999.

Joseph R. Colantuono, Wehrman & Colantuono, LLC, Leawood, KS, for Victor A Stephens, plaintiff.

David D. Plinsky, Office of City Attorney, Topeka, KS, for Topeka Housing Authority and City of Topeka, Kan., defendants.

### MEMORANDUM AND ORDER

RUSHFELT, United States Magistrate Judge.

The court has under consideration a Motion for Summary Judgment of Defendant City of Topeka, Kansas (doc. 49). Pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), defendant seeks an order to dismiss the action of plaintiff for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, it seeks an order for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff opposes the motion.

### I. Subject Matter Jurisdiction

The court first addresses the motion to the extent it comes under Fed.R.Civ.P. 12(b)(1). That Rule allows defendant to assert, by motion, a defense that the court lacks subject

matter jurisdiction. Fed.R.Civ.P. 12(h)(3) directs that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

Defendant suggests that the court lacks subject matter jurisdiction over racial discrimination claims of plaintiff, because he failed to exhaust administrative remedies. It claims he did not allege discrimination based upon race in his charge to the Equal Employment Opportunity Commission (EEOC). Plaintiff contends that he adequately exhausted administrative remedies. He contends that his charge to the EEOC clearly indicates that defendant treated him differently from white managers or employees. He suggests that his present claims are reasonably related to the allegations of discrimination in his charge to the EEOC.

■■ A plaintiff must exhaust his or her administrative remedies before filing suit under Title VII. *Jones v. Runyon,* 91 F.3d 1398, 1399–1401 (10th Cir.1996), *cert. denied,* 520 U.S. 1115, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997). "The suit may include allegations of discrimination reasonably related to the allegations listed in the administrative charge, including new acts occurring during the pendency of the administrative charge." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997). "[C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). "A party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances." *Harrell v. Spangler, Inc.,* 957 F.Supp. 1215, 1219 (D.Kan.1997). Congress has established various administrative remedies, which a plaintiff must exhaust prior to filing an action in federal court. "Requiring exhaustion of these administrative remedies serves the dual purpose of providing the employer 'notice of the charges and an opportunity to comply voluntarily with the statutes' and affording 'the EEOC the opportunity to settle

disputes through conference, conciliation, and persuasion, thus avoiding unnecessary judicial action.' " *Schroder v. Runyon,* 1 F.Supp.2d 1272, 1274 (D.Kan.) (citations omitted), *aff'd,* 161 F.3d 18 (10th Cir.1998). "Allowing a complaint to encompass allegations outside the ambit of the predicate charge would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party notice of the charge." *Harrell,* 957 F.Supp. at 1219. When the issue is not one of timeliness, but rather the adequacy and completeness of a filed charge of discrimination, exhaustion of administrative remedies is jurisdictional in nature. *Schroder,* 1 F.Supp.2d at 1278.

■■ In this instance plaintiff has exhausted administrative remedies related to his asserted racial discrimination claims. The charge lodged with the EEOC provides adequate notice that he alleges discrimination based upon race. "[T]o effectuate the remedial purpose of Title VII", the court liberally construes charges filed with the EEOC. *Harrell,* 957 F.Supp. at 1219. "[T]he crucial inquiry is whether the claims set forth in the civil complaint fall within the scope of the investigation that could reasonably be expected to grow out of the EEOC charges." *Id.* Plaintiff failed to check the box labeled "Race" in his charge of discrimination, filed with the EEOC. It fairly encompasses, nevertheless, a claim for discrimination based upon race. The charge specifically states: "I believe I was treated differently because of my National Origin and my age, because younger, white managers/employees (specifically Theresa Lewis) were treated differently." (Charge of Discrimination, attached as Ex. A to Reply in Opp'n to Def.'s Mot. Summ.J., doc. 53.) The term "white" suggests racial discrimination rather than discrimination based upon national origin. Where as here the plaintiff filed the charge of discrimination *pro se,* the court, furthermore, accords reasonable leniency to the charge. *See Moore v. Norfolk and Western Ry. Co.,* 731 F.Supp. 1015, 1017 (D.Kan. 1990). In the present context the scope of the investigation that one would reasonably expect to arise from the charge filed by plaintiff would encompass the allegations of

racial discrimination in his civil complaint here. "[A]n investigation of plaintiff's national origin claims would necessarily include an investigation into potential race claims, where, as here, the alleged underlying conduct is the same for either claim." *Daneshvar v. Graphic Technology, Inc.,* 18 F.Supp.2d 1277, 1284 (D.Kan.1998).

## II. Failure to State a Claim Upon Which Relief Can be Granted

Defendant also refers to Fed.R.Civ.P. 12(b)(6). Under that Rule a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b) directs courts to treat motions under subsection (6) as one for summary judgment, however, if "matters outside the pleading are presented to and not excluded by the court." Defendant has presented matters outside the pleading. The court has considered them. It thus disregards the invocation of Fed. R.Civ.P. 12(b)(6) and considers the motion of defendant to be one solely for summary judgment, except for the challenge to subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1).

## III. Summary Judgment

Pursuant to Fed.R.Civ.P. 56(c), defendant seeks summary judgment on the claims of plaintiff. He alleges that defendant unlawfully discriminated against him on the basis of his race and national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. (Pretrial Order, doc. 47, ¶¶ 2–4.) He further alleges that defendant unlawfully retaliated against him for bringing a lawsuit against a former employer, City of Columbia, Missouri. (*Id.* at ¶¶ 3–4.) The following facts are either uncontroverted or, if controverted, viewed in the light most favorable to the plaintiff. *Applied Genetics Intern., Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). The court has ignored immaterial facts and those not properly supported in the record. To properly controvert an alleged uncontroverted fact, the party opposing summary judgment may not merely rely upon allegations or denials of his pleading or unsupported assertions that the fact is controverted. Conclusory allegations within a complaint, pretrial order,

or affidavit do not suffice to create a controverted issue of fact. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (specifically mentioning complaint and affidavit). In placing a fact in controversy the party opposing summary judgment "shall refer with particularity to those portions of the record upon which [that] party relies." D.Kan. Rule 56.1. The court deems "[a]ll material facts set forth in the statement of the movant ... admitted for the purpose of summary judgment unless specifically controverted by the statement of [plaintiff]." *Id.*

### 1. Factual Background

Plaintiff is black. He originates from Jamaica. He applied for a position of Deputy Director of the Topeka Housing Authority (THA) with defendant City of Topeka, Kansas (City). He underwent interviews with a four-person committee of the City, consisting of Lana Balka, the Executive Director of THA and ultimately his direct supervisor, Nadine Birch, THA Commissioner; Al Bailey, Director of Planning and Community Development for the City and direct supervisor of Lana Balka; and Robert Bugg, Director of Personnel. Before offering plaintiff a position, the committee asked Ms. Balka to check his references.

Ms. Balka investigated some, but not all, listed references. She did not verify the employment history that plaintiff had with City of Columbia, Missouri. Unbeknownst to the committee at the time of hiring, allegations of sexual harassment against him had marred his tenure with Columbia. Such allegations would have concerned both Ms. Balka and Mr. Bailey as to the hiring decision. Had Mr. Bailey known of them, he would have recommended someone else for the position in Topeka. Ms. Balka first learned of the complaints by Columbia from a newspaper article. The newspaper published the article after the employment of plaintiff with defendant terminated.

When defendant hired plaintiff, furthermore, its failure to verify employment history with Columbia also left the committee without knowledge of a complaint and lawsuit he had against Columbia for alleged employ-

ment discrimination. Ms. Balka later learned that plaintiff had claims or a complaint against Columbia. She did not know the basis for the lawsuit. She knew nothing of a lawsuit when she first recommended that plaintiff be terminated in December 1995. After defendant hired plaintiff, Mr. Bailey heard rumors of a complaint. This concerned him. He knew of no lawsuit filed by plaintiff, however, before he had decided plaintiff's performance was unsatisfactory. Defendant learned from a Topeka newspaper that plaintiff had filed a discrimination action against Columbia. The newspaper published the article after plaintiff had left the employ of defendant.

During his employment with defendant plaintiff reported to Ms. Balka, a Caucasian. His duties included the day-to-day supervision of staff members, so as to keep programs running and information flowing to them and Ms. Balka. Within four months of his hiring, Ms. Balka concluded it had been a mistake, due to a lack of quality and quantity in his work and poor relations with staff, as demonstrated by perceived favoritism and fear of retribution for challenging his decisions or opinions. He did not follow instructions. He did not monitor and make sure the specifics of program execution were carried out in a necessary, detailed manner. He had been the subject of a complaint of race and sex discrimination, while employed by defendant. He had become very hostile and argumentative, when Ms. Balka informed him of items which needed correction. He was insubordinate to her. He challenged her authority and responded negatively to her supervision on a daily basis. She assigned other staff to attend meetings which he was to cover, as she did not trust him to bring back the important information. He would sleep during meetings or excuse himself to go to the bathroom and never return.

Ms. Balka informed Messrs. Bailey and Bugg that she felt plaintiff was "not working out." Prior to Christmas 1995 she informed plaintiff of her feelings. Just before his probationary period was to expire in January 1996, she asked Mr. Bailey, another Caucasian, to terminate plaintiff. Mr. Bailey instead extended the probationary period.

When Ms. Balka informed him of the extension, he became angry and yelled at her. Ms. Balka concluded that he had shown no improvement during the beginning of the extended probationary period.

In February 1996, plaintiff testified in a criminal hearing that he did not know whether regulations of the Department of Housing and Urban Development (HUD) prohibited a tenant from growing marijuana on public housing authority property. This testimony generated much publicity and embarrassment for the Mayor. His exhibited lack of familiarity with applicable regulations concerned Ms. Balka.

In late February 1996 Mr. Bailey realized the performance of plaintiff had not improved and that communication between him and Ms. Balka had been reduced to written memos. He also knew that plaintiff could not take over, if he fired Ms. Balka, because of feuding factions within the THA. He considered firing both of them.

Plaintiff had a definite personality conflict with Ms. Balka and other staff members. This irreparable conflict between him and Ms. Balka had a negative effect on employee morale generally at THA. Sometime in March 1996 Ms. Balka met with Mr. Bailey to recommend the termination of plaintiff. Mr. Bailey concluded that he had no alternative but to terminate the employment relationship. He notified plaintiff of the City's intent to terminate his employment. Mr. Bailey had exclusive authority over the decisions to extend the probationary period and to terminate the employment of plaintiff. On March 22, 1996, the employment relationship ended. After plaintiff left the employ of defendant, the morale of employees improved. The work atmosphere relaxed. A sense of cooperation among staff returned. About a month later Mr. Bailey terminated the employment of Ms. Balka, in part for her failure to check the references of plaintiff and thus failing to uncover allegations of sexual harassment against him, during his employment at Columbia.

Defendant claims it based the decision to terminate solely on the performance of plaintiff while in its employ. It claims the decision had nothing to do with his prior employ-

ment with Columbia. Although it proffers a number of individual reasons for the termination, it essentially terminated his employment for his substandard performance and for causing low morale among other employees. He was a disruptive force in the office. He had difficulties in communicating effectively and maintaining professional relationships with other managers. He had a reputation for untrustworthiness and dishonesty and for conducting covert checks on employees. He was untrustworthy about his time worked. A complaint also charged him with sex discrimination during his employ with defendant.

Ms. Balka recommended that defendant terminate plaintiff during both his original probationary period and again during his extended probationary period. She based her recommendation at least in part on several factors: his lack of communication and rapport with staff; his inability to communicate and complete tasks; his failure to move his family to Topeka despite a residency requirement for his position; his negative responses to counseling about discussing religion during staff meetings; untrustworthiness, as demonstrated by his retaining advanced travel funds which were not properly used; unfamiliarity with applicable regulations, as demonstrated by testimony about the propriety of growing marijuana on public housing property; disrespect for her; sexist treatment toward her; and unwarranted treatment toward the maintenance chief, Steve Creollo. The unfamiliarity with applicable regulations exhibited by plaintiff generated a lot of publicity and embarrassed the Mayor.

Plaintiff claims the decision to terminate him was based at least in part on factors other than his performance. He disagrees with all statements of defendant which indicate that the decision was not motivated by race, national origin, and his filing of a lawsuit against Columbia. In support of his disagreement he submits that Ms. Balka treated Native Americans, Blacks, and West Indians differently from other races. He further submits that he filed a lawsuit against Columbia. He also relies upon his "impressive resume" and his subjective beliefs as to the quality of his performance to

support his suggestion that the decision to motivate was not based solely upon his performance.

By affidavit plaintiff denies in mostly conclusory terms the reasons for his termination. He characterizes his performance as outstanding. He asserts he was not disruptive in the workplace or to the productivity of other employees. He asserts he is trustworthy and honest. He claims to do no covert checking on employees. He claims not to discuss religion in meetings. He asserts that he followed the procedure for paying back unused travel advances. He claims to have kept abreast of applicable regulations. He asserts that he talked to staff during the last three months of his tenure. He claims to have regularly dealt with all staff on a professional level.

On July 17, 1997, the Equal Employment Opportunity Commission mailed plaintiff a right-to-sue letter. On October 16, 1997, he filed this action. He alleges the City of Topeka retaliated against him for his lawsuit against the City of Columbia. He further alleges that defendant discriminated against him on the basis of his race and national origin. He denies being African–American. He asserts his race and national origin are both Jamaican.

The only physical feature that would reveal plaintiff to be Jamaican is his accent. Both Mr. Bailey and Ms. Balka knew him to be of Jamaican national origin. Plaintiff often discussed his culture in the work place. The only comments Ms. Balka heard from other employees regarding his national origin was a shared excitement that he promised to share Jamaican food and recipes. Ms. Balka has no opinion about his accent. She does not recall whether she complimented him on it. Therese Lewis, an employee under plaintiff's supervision, complimented him on his accent. Plaintiff heard Ms. Balka make a comment regarding the tenants and his accent. Mr. Bailey made a comment regarding plaintiff's inflection. Plaintiff knows of no other person in a supervisory capacity who commented on his accent. He knows of no derogatory remarks made by supervisory employees at THA about African–Americans. He identifies no other comments regarding

his claims of race and national origin discrimination.

Plaintiff presents no evidence to indicate that defendant discriminated against anyone else on the basis of an accent. He testified that Ingrid Robinson, a person of apparent Chinese national origin, spoke with a Trinidadian accent, but he has no evidence that defendant discriminated against her on the basis of her race or national origin.

## 2. Summary Judgment Standards

In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material", if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Frandsen v. Westinghouse Corp.,* 46 F.3d 975, 977 (10th Cir.1995); *FDIC v. 32 Edwardsville, Inc.,* 873 F.Supp. 1474, 1479 (D.Kan.1995).

"[T]he movant bears the burden of showing the absence of a genuine issue of material fact." *Neustrom v. Union Pac. R.R.,* 156 F.3d 1057, 1061 (10th Cir.1998) (quoting *Carland v. Metropolitan Life Ins. Co.,* 935 F.2d 1114, 1120 (10th Cir.1991)). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* Conclusory allegations of the complaint or of an affidavit do not suffice to create a controverted issue of fact. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Courts construe Fed. R.Civ.P. 56 to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548. "Entitlement to summary judgment must be proven beyond a reasonable doubt." *Duff v. GMC,* 962 F.Supp. 1420, 1422 (D.Kan. 1997) (citing *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980)).

## 3. Analysis

### A. Timely Filing Charge of Discrimination

■ Defendant argues that plaintiff failed to file a timely charge of discrimination with the EEOC. It submits sworn testimony of plaintiff that, he relies only upon the 180-day filing limitation period of 42 U.S.C. § 2000e–5(e) in making his Title VII claim. The testimony of plaintiff is mostly immaterial to the issue before the court. It does not matter what plaintiff believes to be the applicable limitation period for filing a charge of discrimination. The applicable limitation period is a question of law for the court to decide.

■ Timely filing a charge of discrimination with the appropriate agency "is a condition precedent to suit that functions like a statute of limitations and is subject to waiver, estoppel, and equitable tolling." *Million v. Frank,* 47 F.3d 385, 389 (10th Cir.1995); *Olds v. Alamo Group (KS), Inc.,* 889 F.Supp. 447, 450 (D.Kan.1995). "Title VII provides a

180–day filing period after the occurrence of an unlawful discriminatory practice. The period is extended to 300 days in 'deferral states,' where the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations." *Mascheroni v. Board of Regents of Univ.*, 28 F.3d 1554, 1557 n. 3 (10th Cir.1994) (citations omitted). "A plaintiff in a deferral state such as Kansas must file a complaint with the EEOC within 300 days of the alleged discriminatory acts." *Gray v. Phillips Petroleum Co.*, 998 F.Supp. 1221, 1225 (D.Kan.1998).

Defendant contends that plaintiff cannot avail himself of the 300–day filing period, as he filed no charge of discrimination with the state agency. It purports to quote 42 U.S.C. § 2000e–5(e) and *Martin v. Nannie & the Newborns, Inc.*, 3 F.3d 1410, 1414 n. 3 (10th Cir.1993) for the proposition that "[t]his 300 day limitation applies only in those states, like Kansas, which have statutorily prohibited sexual or racial discrimination, *and only if the plaintiff has initially instituted state or local proceedings.*" (Emphasis added.) Neither of the cited sources, however, contain such language. Nor do they support the underlined language. Independent research of the court has uncovered only one decision, an unpublished opinion of the Tenth Circuit Court of Appeals, which contains the quoted language. *See Ziegler v. K–Mart Corp.*, 74 F.3d 1250, No. 95–3019, 1996 WL 8021, at *3 n. 6 (10th Cir. Jan.10, 1996) (Table, text on Westlaw). It appears that defendant quoted *Ziegler*, but failed to cite it or furnish a copy to the court in accordance with D.Kan. Rule 7.6(b). The appearance comes not only from the quoted language, but from the fact that defendant like the Tenth Circuit cited to 42 U.S.C. § 2000e–5(e) and *Martin.* Unpublished opinions of the Tenth Circuit are not binding upon this court. The court declines, moreover, to consider unpublished opinions not furnished in accordance with D.Kan. Rule 7.6(b). *See Outley v. Coca Cola Enters., Inc.*, No. Civ.A. 97–2056–GTV, 1998 WL 118070, at *3 (D.Kan. Mar.11, 1998).

Authority indicates, furthermore, that a plaintiff need not file suit with the appropriate state agency to reap the benefit accorded by the 300–day provision:

> The defendant is correct that a complainant generally must file charges with the E.E.O.C. within 180 days of the discriminatory practice unless the complainant first files charges with a state or local agency having the authority to compel relief from the charged practice which then extends the filing period to 300 days. The defendant overlooks, however, the terms of the typical worksharing agreement between a deferral state, like Kansas, and the E.E.O.C. and the manner in which those terms have been interpreted and applied by current case law. Suffice it to say, in a deferral state, " 'a Title VII claimant must file his discrimination charge with the appropriate state or local agency, or with the E.E.O.C., within 300 days of the alleged unlawful act.' "

*Kidwell v. Board of County Comm'rs*, 978 F.Supp. 1439, 1441–42 (D.Kan.1997) (citations omitted).

Defendant has presented nothing to support a finding that plaintiff cannot avail himself of the 300–day period. The court declines to enter summary judgment for the alleged failure to timely file a charge of discrimination with the EEOC. Plaintiff filed his charge within 300 days of the alleged act of discrimination.

Defendant also asserts that the Title VII claims of plaintiff are barred for failure to file this case within ninety days of receiving his right-to-sue letter. Citing his original *pro se* Complaint, stating that plaintiff received the letter "on or about 6/19/97" (Civil Compl., doc. 1), defendant submits that the court should calculate the ninety days from June 19; 1997. Defendant fails to note, however, "that the pretrial order supersedes all pleadings and controls the subsequent course of the case." *Zapata v. IBP, Inc.*, 19 F.Supp.2d 1215, 1217 (D.Kan.1998). In *"Defendant's* factual contentions and legal theories"*, the Pretrial Order states: "Plaintiff received his right-to-sue letter on or about July 19, 1997." (Pretrial Order, at 8, doc. 47 (emphasis added).) Defendant thus appears to have waived any argument that plaintiff

received the letter in June 1997. "Because the Pretrial Order supersedes the complaint ... citations to the latter are unavailing." *Shinwari v. Raytheon Aircraft Co.,* 25 F.Supp.2d 1206, 1209, (D.Kan.1998). Plaintiff, moreover, appropriately controverts receipt in June. He attaches the Notice of Right to Sue received from the EEOC. It is dated July 17, 1997. (*See* Ex. B attached to Mem. Opp'n, doc. 53.) A letter mailed July 17, 1997, cannot be received on June 19, 1997.

The actual date of receipt, however, remains at issue. Citing to the right-to-sue letter itself, as well as paragraph 17 of his affidavit, plaintiff suggests he received the letter on July 18 or 19, 1997. The letter is dated July 17, 1997, which presumptively precludes earlier receipt, but provides no definitive support for actual date of receipt. Paragraph 17, furthermore, provides no support for the date of receipt, as it has no relationship to the issue. (*See* Aff. of Victor Stephens ¶ 17, attached to Mem. Opp'n.) To further obfuscate the issue, plaintiff later states in the affidavit: "My original pro se complaint recited the incorrect year when I stated the date that I received my Right to Sue Letter. I received my Right to Sue Letter on July 17, 1997." (Aff. of Victor Stephens at 10.) As mentioned earlier, furthermore, defendant contends in the Pretrial Order that plaintiff received the letter on or about July 19, 1997. Neither party provides any other evidence about the date of receipt, such as a certified mail receipt, which should reveal the date plaintiff signed for the letter.

Were the court to hold plaintiff to the July 17, 1997, date set forth in his affidavit, it would find his Title VII claims barred for failure to file the complaint within ninety days of receiving the right-to-sue letter. Calculating the ninety days in accordance with Fed.R.Civ.P. 6(a), plaintiff would have had to file the complaint no later than October 15, 1997, had he received the letter on July 17, 1997. The parties do not dispute that plaintiff filed this action on October 16, 1997. Although the three-day mail provision of Fed.R.Civ.P. 6(e) may on first glance appear to save the filing from being untimely in that the EEOC sent the right-to-sue letter by certified mail (*see* Ex. B), that provision

does not automatically extend the ninety-day period by three days. "Rule 6(e) functions only when the prescribed period commences upon service by mail, and the ninety-day period of Title VII commences upon receipt, not mailing." *Stambaugh v. Kansas Dep't of Corrections,* 844 F.Supp. 1431, 1433 (D.Kan. 1994).

The court does not isolate one piece of evidence, however, in ruling on a motion for summary judgment. It looks at all the evidence presented and construes the facts in a light most favorable to plaintiff. In this instance the date set forth in the affidavit appears suspect for a number of reasons. In the last paragraph of his affidavit plaintiff attempts to correct the clearly erroneous date set forth in his original complaint. He begins by admitting that he "recited the incorrect year" in the original complaint. This "correction" is itself incorrect. The statement does not remedy the deficiency of the original complaint. The complaint indicated receipt "on or about 6/19/97." The year was correct, but the month was not. Were one to change the month only, the date of receipt would be on or about July 19, 1997. That characterization correlates exactly with the contention of defendant in the Pretrial Order. Despite that correlation, however, plaintiff proceeds to muddy the water even more by specifically averring that he received the right-to-sue letter "on July 17, 1997." The letter itself raises questions as to the accuracy of the averment. The letter is dated July 17, 1997. It is highly improbable that plaintiff would have received a certified letter the day it was dated and presumably mailed. Plaintiff states as an uncontested fact, moreover, that he received the letter "on or about July 17, 1997." Defendant contests receipt in July. It does not argue, however, that the affidavit of plaintiff sets forth the correct date of receipt. It suggests that the court find the date of receipt to be June 19, 1997. This suggestion has no support in the evidence, but places the date of receipt in dispute.

■ Viewing the facts in a light most favorable to plaintiff, as the court must do in ruling on a motion for summary judgment, it finds the actual date of receipt either un-

known or in dispute. Although Fed.R.Civ.P. 6(e) provides no automatic three-day extension to the ninety-day period prescribed by Title VII, "it does afford upon general reference a presumption of receipt three days after mailing if the date of receipt is unknown or in dispute." *Stambaugh v. Kansas Dep't of Corrections*, 844 F.Supp. 1431, 1433 (D.Kan.1994). Utilizing that presumption for the purposes of this motion, the court finds plaintiff received the right-to-sue letter on July 20, 1997. Calculating the ninety-day period from that date in accordance with Fed.R.Civ.P. 6(a) makes the filing of the complaint timely.

## B. WRONGFUL TERMINATION ON BASIS OF DISCRIMINATION

Plaintiff claims that defendant wrongly terminated his employment because of his race and national origin in violation of Title VII and 42 U.S.C. § 1981. (Pretrial Order, ¶ 3.) He claims his race and national origin are both Jamaican. He denies membership for any other race. Neither Title VII nor § 1981 specifically recognize Jamaican as a discrete race. Title VII, nevertheless, prohibits discriminatory employment practices based upon the race, color, or national origin of an individual. 42 U.S.C. § 2000e–2(a). It thus prohibits the alleged discriminatory practices of defendant, whether plaintiff proceeds on the basis of race or national origin.

"Although § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *St. Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (quoting *Runyon v. McCrary*, 427 U.S. 160, 168, 174–175, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1981 does not specifically forbid discrimination for being Jamaican. Such illegality, however, appears to comport with the purposes of the statute. The United States Supreme Court has stated:

Based upon the history of § 1981, we have little trouble concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.

*St. Francis College*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) (holding that person born in Iraq and of Arab origin was protected by § 1981). "[T]he line between national origin discrimination and race discrimination is not often clear." *Tran v. Standard Motor Prods., Inc.*, 10 F.Supp.2d 1199, 1205 n. 8 (D.Kan.1998) (citing *id.* at 614, 107 S.Ct. 2022). This court has little difficulty holding that § 1981 protects a black Jamaican from discrimination, even when such individual asserts his "race" is Jamaican. It considers plaintiff's claim of discrimination based upon his being Jamaican to fall within the protection against racial discrimination afforded by § 1981. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 n. 10 (10th Cir.1997) (considering a claim of discrimination based upon Mexican–American ancestry to fall within the protection against racial discrimination afforded by § 1981); *Amro v. Boeing Co.*, 153 F.3d 726, No. 97–3049, 1998 WL 380510, at *2 n. 2 (10th Cir. July 8, 1998) (Table, text on Westlaw) (considering a claim of discrimination based upon Lebanese ancestry to fall within the protection against racial discrimination afforded by § 1981).

The court analyzes claims brought pursuant to Title VII and 42 U.S.C. § 1981 under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Whether plaintiff proceeds under Title VII or § 1981, the same

standards and burdens apply. *Daneshvar v. Graphic Technology, Inc.,* 18 F.Supp.2d 1277, 1285 n. 8 (D.Kan.1998); *Garcia–Harding v. Bank Midwest, N.A.,* 964 F.Supp. 1492, 1506 (D.Kan.1997). To avoid summary judgment, plaintiff must initially raise a genuine issue of material fact on each element of his *prima facie* case of discrimination. *See Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995).

The Tenth Circuit Court of Appeals has set forth two sets of elements to establish a *prima facie* case of discriminatory discharge. *Compare Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 (10th Cir.1997) (listing the elements as (1) member of a protected class; (2) discharged for violating a work rule; and (3) that similarly situated non-minority employees were treated differently) *with Martin v. Nannie & The Newborns, Inc.,* 3 F.3d 1410, 1417 (10th Cir.1993) (listing the elements as (1) member of a protected class; (2) qualified and satisfactorily performing job; and (3) terminated under circumstances giving rise to an inference of discrimination). *Martin* appears to better state the elements, when similarly situated persons are not present. *See Rawlins–Roa v. United Way of Wyandotte County, Inc.,* 977 F.Supp. 1101, 1105 n. 2 (D.Kan.1997) (finding the *Martin* test "to be the correct standard, particularly because 'similarly situated persons' are not present in every case of discrimination"). In this case no party presents evidence of any non-minority similarly situated to plaintiff being treated differently. He was a probationary, supervisory employee during his employment.

The court will apply the three-part test set forth in *Martin* to determine whether plaintiff has established a *prima facie* case for a wrongful termination claim. If he has established his *prima facie* case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Randle,* 69 F.3d at 451 (citing *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.,* 986 F.2d 1312, 1317–19 (10th Cir.1992)). If defendant presents a nondiscriminatory reason for its actions, the burden then reverts to plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's prof-

fered reason for the challenged action is pretextual—*i.e.,* unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.,* 42 F.3d 616, 622 (10th Cir.1994)). If plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.* "At the summary judgment stage, if the plaintiff can show a *prima facie* case of discrimination and present evidence that the employer's proffered nondiscriminatory reason is a mere pretext, the case should go to the factfinder." *Aramburu,* 112 F.3d at 1403.

Plaintiff is a member of a protected class. The court doubts that plaintiff has met the second and third elements of a *prima facie* case. For the purposes of this motion, however, it assumes that he has met those requirements. Defendant counters the *prima facie* case of plaintiff, nevertheless, with legitimate, nondiscriminatory reasons for discharging him. Plaintiff thus has the burden to demonstrate that the proffered reasons are simply a pretext for discrimination.

 "Under the *McDonnell Douglas* paradigm, [a] plaintiff[ ] must counter defendant's proffer by presenting enough evidence to support an inference that the employer's reason was merely pretext, by showing either that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Tomsic v. State Farm Mut. Auto. Ins. Co.,* 85 F.3d 1472, 1478 (10th Cir.1996) (internal quotations omitted). A reason is not a " 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Unless an employee can offer evidence tending to show the falsity of the employer's innocent explanation for its employment decision, an "employer is entitled to summary judgment." *Trujillo v. University of Colo. Health Sciences Ctr.,* 157 F.3d 1211, 1215 (10th Cir.1998). In proposing to demonstrate that the explanation by the employer is merely a pretext, the plaintiff must show "that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *McKnight v. Kimber-*

*ly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998).

█ A party can show pretext by presenting evidence that the proffered reasons for the adverse employment action contain "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions ... that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citation and internal quotations omitted). The court does not deny summary judgment on "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff disputes the proffered reasons for his termination. He contends that defendant based the decision to terminate at least in part on factors other than his performance. Although he cites only four paragraphs of his affidavit and two portions of the transcript of the Bailey deposition to contest the proffered reasons, the court has exercised its discretion to consider the entire affidavit and the material portions of the deposition. Plaintiff has cited some parts of the affidavit inaccurately. The court has reviewed the entire affidavit.

The court notes the requirements set forth by Fed.R.Civ.P. 56(e) for affidavits. The Rule provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." One may not successfully oppose a motion for summary judgment with unsubstantiated, generalized, non-personal affidavits. *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995). Conclusory allegations of an affidavit without specific supporting facts have no probative value. *Koch v. Koch Indus., Inc.*, 969 F.Supp. 1460, 1471 (D.Kan.1997). "Conclusory statements going to ultimate issues are not adequate to avoid summary judgment." *Id.* An affidavit submitted under Rule 56(e) "must reflect specific concrete facts establishing the particular truth of the matter asserted." *Robben v. Runyon*, No. 96–1154–JTM, 1998 WL 92237, at *2 (D.Kan. Feb.25, 1998).

█ To dispute the proffered reasons for termination, plaintiff relies upon deposition testimony of Mr. Bailey that the suit against Columbia "concerned" or "troubled" him. Such testimony provides no basis for finding pretext on claims that defendant discriminated against plaintiff on the basis of his race or national origin. First, Mr. Bailey indicated that he was troubled by the dismissal from Columbia because of several underlying allegations. Nothing indicates he was "troubled" by the mere fact of litigation. Second, Mr. Bailey only became "troubled" after he read about the specific allegations in a newspaper article, published after he terminated plaintiff from employment. Pretext by definition means that the given reason is not the true reason, but only a cover-up for discrimination. Becoming "troubled" after terminating an employee provides no basis for finding the reasons given by defendant pretextual. That Mr. Bailey may have been "concerned" about the lawsuit likewise provides no basis for inferring that the proffered reasons were simply a pretext for discrimination. No evidence connects the concern with anything relating to the race or national origin of plaintiff.

Plaintiff also disagrees with the reasons given for his termination, simply because he filed suit against his former employer, Columbia. The prior lawsuit of itself, however, provides no adequate basis to overcome the proffered reasons for termination. The mere fact that plaintiff had filed suit against a former employer does not raise an inference of discrimination. It provides no adequate basis to infer that the proffered reasons of defendant are merely pretext for discrimination. The fact that he filed such a suit has no impact on the pretext analysis with respect to the claims of discrimination.

█ ▪ Plaintiff also relies upon ¶ 12 of his affidavit to dispute the given reasons for his termination. It states: "I have a very impressive resume. It is impressive because of the work I did in the Columbia Housing Authority and the nationally reputed Omaha

Housing Authority." The paragraph simply iterates his subjective evaluation of his resume and performance at two previous employers. His opinion about the quality of his own resume has no bearing on the facts of this case. A subjective evaluation by plaintiff of the quality or quantity of his own work lacks persuasive value. *See Shinwari v. Raytheon Aircraft Co.*, 16 F.Supp.2d 1308, 1327 (D.Kan.1998). Plaintiff's "self-appraisal" of his performance does not create a genuine issue of material fact. *Forsythe v. Board of Educ. of Unified Sch. Dist. No. 489*, 956 F.Supp. 927, 934 (D.Kan.1997). "[A]n employee's 'own self-serving remarks standing alone are insufficient to raise doubt as to the credence of the employer's explanation for termination.'" *Schultz v. General Elec. Capital Corp.*, 37 F.3d 329, 334 (7th Cir.1994) (cited with approval in *Shinwari*, 16 F.Supp.2d at 1327). "It is the manager's perception of the employee's performance that is relevant, not plaintiff's subjective evaluation of his own relative performance." *Furr v. Seagate Technology, Inc.*, 82 F.3d 980, 987 (10th Cir.1996), *cert. denied sub nom. Doan v. Seagate Technology, Inc.*, ── U.S. ──, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997).

Plaintiff also relies upon ¶¶ 14 and 17 of his affidavit to show pretext. Paragraph 14 states in pertinent part: "My performance with THA was outstanding. I corrected long-standing problems that existed in the areas of subordinate/supervisor relationships and housing maintenance...." Paragraph 17 states: "I carried out day-to-day supervision of the staff and kept programs running smoothly." These paragraphs also constitute subjective conclusion by plaintiff. They utilize the terms "outstanding" and "smoothly", without any concrete facts to support those characterizations. *See Butler v. City of Prairie Village*, 974 F.Supp. 1386, 1391–93 (D.Kan.1997) (finding the term "unrealistic" conclusory for failure to support with sufficient concrete facts). The court accords no weight to conclusory allegations in an affidavit in opposition to a motion for summary judgment. *Id.* Paragraphs 14 and 17, furthermore, constitute no more than subjective evaluations by plaintiff about his own performance. They provide no adequate basis for

denying summary judgment. *See Shinwari*, 16 F.Supp.2d at 1327.

The one cited example in ¶ 14 of the affidavit, moreover, does not show the performance of plaintiff to be outstanding. One example standing alone does not suffice to support a conclusion. *Butler*, 974 F.Supp. at 1391–93. The assertion of the example also constitutes a conclusion to some extent. Plaintiff provides no facts that he corrected any problem. He provides no facts that the problems, if any existed, were long-standing.

The court disregards ¶ 14 of the affidavit of plaintiff in its entirety. It views ¶ 17 as supporting an averment that plaintiff carried out day-to-day supervision of the staff and kept programs running. It disregards the subjective and conclusory opinion that he kept them running smoothly.

Plaintiff lastly relies upon ¶ 3 of his affidavit to show pretext. He states therein that he disagrees "with all statements that directly or indirectly state that the decision to dismiss me was not motivated by race, national origin and my filing of a previous Title VII suit." This conclusory statement of itself provides no basis for refuting the proffered reasons for termination. That plaintiff disagrees with them does not of itself show the reasons to be unworthy of belief or that discrimination was the real reason for his termination. He must provide concrete facts to support the statements in his affidavit.

Plaintiff controverts the proffered reasons for termination on two grounds: (1) Ms. Balka treated Orientals, Caucasians, and people of Spanish descent different from Native Americans, Blacks, and West Indians; and (2) he filed a Title VII suit against his former employer, Columbia Housing Authority. He identifies seven items to support the allegation of disparate treatment by Ms Balka. The court will examine each of these in order:

1. Plaintiff submits that Ms. Balka did nothing to reprimand Therese Lewis, a Caucasian, for cursing. Assuming the truth of the matter adds nothing to show pretext. It also does not support the allegation that Ms. Balka treated employees differently, because of race. Plaintiff does not aver that Ms.

Balka reprimanded non-Caucasians for cursing, while overlooking the behavior of Ms. Lewis. Without some showing of disparate treatment, the court cannot find the failure to reprimand Ms. Lewis material to the issues here.

2. Plaintiff also submits that Ms. Balka did nothing to reprimand Steve Creollo, a Fillipino, for calling a Native American a "dog." A dispute between a Fillipino and a Native American has no relevance to allegations that defendant discriminated against plaintiff on the basis of his race (Black Jamaican) or his Jamaican national origin. The allegation proves nothing of consequence with respect to pretext. It provides no basis to question the proffered reasons for termination.

Plaintiff further alleges that Mr. Creollo discriminated against blacks. Plaintiff specifically alleges that Mr. Creollo "constantly wrote up Black employees that [sic] were not doing anything wrong." He identified one incident when Mr. Creollo reprimanded a Black employee, who was ultimately fired, for actions in which he did not reprimand Caucasians. Much of the allegation constitutes an unsupported conclusion. The allegation, furthermore, has no relevance. No evidence of record exists that Mr. Creollo influenced the decision to terminate plaintiff. Nor does the evidence show that Ms. Balka or Mr. Bailey had any knowledge or involvement as to reprimand by Mr. Creollo. Absent any nexus between his reprimand and the decision to terminate here plaintiff the alleged discrimination against blacks by Mr. Creollo does not support an inference of pretext. *Cf. Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (holding that isolated comments, unrelated to the challenged action, do not suffice to show discriminatory animus in termination decisions; plaintiff must demonstrate a nexus between allegedly discriminatory statements and the decision to terminate); *Daneshvar v. Graphic Technology, Inc.,* 18 F.Supp.2d 1277, 1291 (D.Kan. 1998) (holding that "[i]n the absence of any nexus between these individuals and the promotion decisions in question, these isolated comments cannot support an inference of pretext").

3. Plaintiff submits that Ms. Balka fired two Black employees, one of whom committed the same infraction as a Mexican–American who was not terminated. It appears this submission is based upon inadmissible hearsay. Viewing the facts in a light most favorable to plaintiff, however, the court assumes for the purposes of this motion that the submission is based upon admissible evidence. *See Thomas v. IBM,* 48 F.3d 478, 485 (10th Cir.1995). For purposes of this motion for summary judgment, this submission indicates some disparate treatment between races by Ms. Balka.

4. Plaintiff also submits that Ingrid Robinson, a West Indian from Trinidad, threatened to sue Ms. Balka for creating a hostile work environment. The court disregards this submission. It has for its basis only inadmissible hearsay. "[H]earsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.'" *Id.* (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). Plaintiff presents no affidavit or deposition testimony by Ms. Robinson.

5. Plaintiff further submits that unspecified residents of THA, mostly black, filed a petition against Ms. Balka, because she placed elsewhere computers designated for their center. The court disregards this submission, as based upon inadmissible hearsay. Plaintiff has not placed the petition in evidence. Nor has he presented affidavit or testimony from any resident who signed the petition.

6. Plaintiff submits that Ms. Balka reduced the hours of Black employees without reducing the hours of white employees. He submits that the Black employees sent to HUD a petition requesting an investigation. These submissions appear to be based upon inadmissible hearsay. The court finds nothing to show personal knowledge of these facts by plaintiff. The court thus disregards them.

7. Plaintiff lastly submits that, when he began work for THA in June 1995, Ms. Balka

told him that Joan Martin, a black employee, was not trustworthy; that Ms. Robinson was emotional and completely difficult to work with; and that Anthony Jones, another black employee, was worthless, lost his phone and did not pay for it, did not do his work, was never invited to her meetings, was dirty and stinky, and would never get a job except over her dead body. He also submits that Ms. Balka made no derogatory statements regarding a Caucasian, Mexican, or Asian. Plaintiff makes no attempt to demonstrate that any of these statements are false. Without some allegation that they are false, they demonstrate no discriminatory animus. They show no disparate treatment by Ms. Balka. They demonstrate nothing with respect to pretext.

Viewing the facts in a light most favorable to him, ¶ 3 of his affidavit thus provides plaintiff one instance of admissible disparate treatment to support his conclusory disagreement with the proffered reasons for his termination. An isolated instance of disparate treatment of another individual, unrelated to the present action, does not suffice to show pretext. *Cf. Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (holding isolated comments, unrelated to the challenged action, insufficient to show discriminatory animus in termination decisions and that plaintiff must demonstrate a nexus between allegedly discriminatory statements and the decision to terminate).

Even considering the isolated incident of disparate treatment by Ms. Balka toward blacks, along with the other non-conclusory, supported allegations in his affidavit, plaintiff provides insufficient evidence to show pretext. He has not shown that a discriminatory reason was the real reason or more likely motivated defendant. He has not shown the proffered explanation unworthy of belief. He has not presented evidence which tends to show the given reason to be false. Without such evidence, an "employer is entitled to summary judgment." *Trujillo v. University of Colo. Health Sciences Ctr.,* 157 F.3d 1211, 1215 (10th Cir.1998).

Plaintiff has thus presented evidence that Ms. Balka on one occasion treated Black employees differently from a Mexican–American employee. He presents no other admissible evidence to show disparate treatment of blacks. The isolated incident involving Ms. Balka did not involve plaintiff. It was remote in time to the decision to terminate him. It occurred before defendant hired plaintiff. Whatever inference this one incident raises is countered by the uncontested fact that she was a strong advocate in the decision to hire plaintiff. It does not support a rational inference that Ms. Balka had a discriminatory motive to terminate his employment just six months after she strongly advocated his hiring. His race was just as apparent at hiring as upon dismissal.

Plaintiff avers that he showed no favoritism to any employee and exacted no retribution. He also states that he did no covert checking on employees and was trustworthy and honest. He alleges that Ms. Balka was very disrespectful to him and that he was reprimanded once for leaving a meeting to use the bathroom. He does not aver that the reprimand was inappropriate. The alleged disrespect does not raise an inference of discriminatory animus or motive. Plaintiff avers that he dealt with all staff members on a professional level regularly; that he went to Community and Economic Development meetings; that he carried out day-to-day supervision of the staff and kept programs running; that he spent the required amount of time at work and more; that he did not discuss religion in staff meetings; that he followed the procedure for paying back unused money; that he kept abreast of HUD regulations; that he did not yell at Balka when she told him he was terminated; and that he talked to the staff during his last three months of employment.

The averments of plaintiff may lead to an inference that he was adequately doing his job in some respects. The uncontested facts also show, however, that he did not follow instructions; that he did not monitor and make sure the specifics of program execution were carried out in a necessary, detailed manner; that he had been the subject of a complaint of race and sex discrimination, while employed by defendant; that he had become very hostile and argumentative, when Ms. Balka informed him of items which

needed correction; that he was insubordinate to her; that he challenged her authority and responded negatively to her supervision on a daily basis; that she assigned other staff to attend meetings which he was to cover, as she did not trust him to report important information; that he had difficulties in communicating effectively and maintaining professional relationships with other managers; and that he had a reputation for untrustworthiness, dishonesty, and for conducting covert checks on employees. The uncontested facts also show improved morale after plaintiff was terminated.

Plaintiff has not presented sufficient evidence that the reasons proffered by defendant are merely a pretext for unlawful discrimination. That he may have been adequately performing some aspects of his job does not tend to show the falsity of the proffered reasons. The uncontested facts show that his work performance was substandard. A party cannot avoid summary judgment by averring that he adequately performs some aspects of job, when he leaves uncontested the fact that his performance was substandard in many other respects. Plaintiff has presented no evidence that the proffered reasons for his termination contain such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions, so as to enable a reasonable juror to rationally find them unworthy of credence. The stated reasons are plausible. They are consistent with the other evidence. They are coherent. They do not contradict other evidence.

Plaintiff also has not shown that discrimination was the real reason for his termination. He points to an isolated incident involving Ms. Balka as his sole support for finding his race motivated the decision. As already mentioned, that incident does not raise an inference of discriminatory motive. Plaintiff has presented no evidence that the incident affected the employment decision. The undisputed facts show, furthermore, that Ms. Balka strongly supported his hiring. His termination within six months of his hiring cuts against any inference that she recommended his termination because he was black. Mr. Bailey and not Ms. Balka,

furthermore, had sole responsibility and authority to terminate plaintiff's employ. Plaintiff presents nothing to indicate that race motivated his decision. Ms. Balka did recommend the termination, but the facts reveal that Mr. Bailey independently made the ultimate decision. Plaintiff presents no evidence to suggest that Mr. Bailey knew of the incident regarding Ms. Balka or that it affected his decision in any manner.

Plaintiff has also presented insufficient evidence that the reasons for his termination were pretextual for discrimination due to his national origin. The only evidence he presents in this regard are three comments about his accent. This does not suffice. Ms. Balka mentioned the accent, but plaintiff presents nothing to indicate that this was motivated by any discriminatory intent. Mr. Bailey apparently attributed his inflection to the location of his birth. There appears nothing discriminatory about that attribution. Nothing shows the comment motivated by any discriminatory intent. Therese Lewis, a non-supervisor who plaintiff claims had abnormal influence for her position, complimented plaintiff for his accent. The compliment may indicate recognition of his national origin. It does not, however, indicate a discriminatory animus. Except for these comments a plaintiff presents nothing to create an inference that the proffered reasons for his termination are simply a pretext for discrimination on the basis of national origin. That defendant noted his accent does not raise an inference that his termination was discriminatory.

 Isolated comments about accent or national origin do not suffice to impose liability. They do not show discriminatory motivation. At best they constitute stray remarks. Plaintiff "must demonstrate a nexus exists between these allegedly discriminatory statements and the ... decision to terminate h[im]." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) (ADEA case). He has established no nexus between the stray remarks regarding his accent and the decision to terminate him.

Plaintiff has shown no dispute or genuine issue concerning the sincerity of defendant's proffered reason for his termination. The totality of his proffered evidence is insuffi-

**964**

cient to raise a genuine doubt about the motivation of defendant at the time of termination. "The test is good faith belief." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998). The uncontested facts demonstrate clearly that defendant at least had a good faith belief that the performance of plaintiff was substandard. The facts indeed show substandard performance on his part. There is no adequate evidence that defendant terminated plaintiff for anything other than his unacceptable job performance. Plaintiff retains the ultimate burden of proof that defendant intentionally discriminated against him. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) Plaintiff has presented neither direct nor indirect evidence to challenge the motives of defendant. He has not shown its proffered reasons for termination "unworthy of belief." Summary judgment is appropriate for the failure of plaintiff to show pretext.

**C. Hostile Work Environment**

Defendant submits that plaintiff has failed to establish a claim of hostile work environment. No such claim appears in the Pretrial Order. To the extent the allegations of plaintiff can be construed to encompass such a claim, plaintiff has not shown such an environment to exist. He has not addressed the matter in response to the motion. The court thus construes the matter as uncontested. It grants summary judgment on any claim based upon a hostile work environment.

**D. Retaliation**

■ Defendant suggests that plaintiff has failed to demonstrate termination in retaliation for engaging in protected activity. To establish a *prima facie* case of retaliation plaintiff must show: "(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action." *Jeffries v. State*, 147 F.3d 1220, 1231 (10th Cir.1998). The same elements apply for claims of retaliation under both § 1981 and Title VII. *Rob-*

*erts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103 n. 1 (10th Cir.1998).

Plaintiff filed a charge of discrimination against the City of Columbia, Missouri in 1991. He subsequently filed suit against Columbia in 1993. He has clearly engaged in protected opposition to discrimination.

Viewing the facts in a light most favorable to plaintiff, the court finds that defendant terminated plaintiff's employment. Termination of employment constitutes adverse action. The question remains, however, as to whether plaintiff may pursue a claim of retaliation against a subsequent employer for protected activity he engaged in while employed by a different entity. The parties do not address the issue. The facts present an unusual case, in that plaintiff engaged in protected activity with one employer while alleging retaliation against a subsequent employer. The court assumes, without deciding, that plaintiff may pursue a retaliation claim against defendant for his protected activity while employed by Columbia.

■ A *prima facie* case, however, fails at the third prong. Plaintiff fails to demonstrate the requisite causal connection between the protected activity and his subsequent termination. He argues that the following sequence of events demonstrate retaliation:

1. He engages in protected activity against the City of Columbia.
2. In February or March 1996 Mr. Bailey learns of the litigation against Columbia.
3. Defendant dismisses plaintiff on March 22, 1996.
4. Defendant dismisses Ms. Balka in part for her failure to check the references of plaintiff before his hiring.

He argues that defendant established that information from Columbia was critical to it when it terminated the employment of Ms. Balka in part due to her failure to contact Columbia prior to the hiring of plaintiff. It suggests the court may infer a retaliatory motive under this sequence of events.

The court cannot infer a retaliatory motive in this instance. To establish a causal connection between protected activity and subse-

quent adverse employment action, plaintiff must begin by showing that defendant knew of the protected activity. There can be no causal connection in the absence of knowledge by the employer of the protected activity. Knowledge of an unidentified lawsuit against a former employer does not satisfactorily show the requisite knowledge. Nothing in the record indicates that defendant knew the lawsuit of plaintiff was based upon discrimination, until after it had already terminated his employment. Plaintiff has not established a *prima facie* case of retaliation.

Plaintiff urges the court to draw an inference of retaliatory motive from the additional fact that, shortly after his termination, defendant terminated the employment of Ms. Balka at least in part for her failure to check his employment history with Columbia. The subsequent termination of Ms. Balka provided no basis to infer a retaliatory motive in the termination of plaintiff. Checking the employment history of plaintiff with Columbia might have uncovered the nature of his litigation against Columbia, but it also would probably have revealed serious allegations of his mismanagement, sexual harassment, and inability to maintain professional relationships. Upon the evidence of record, one cannot infer a retaliatory motive against plaintiff from the termination of Ms. Balka. The undisputed facts show that r. Bailey terminated her for not uncovering the allegations of sexual harassment filed against plaintiff while Columbia employed him.

### E. Constructive Discharge

██ Defendant suggests no merit exists for a claim of constructive discharge. Plaintiff does not contest the suggestion. The Pretrial Order, furthermore, appears to contain no such claim. The evidence presented by the parties, moreover, reveals only a question of fact as to whether plaintiff resigned or whether defendant terminated his employment. The evidence reveals no question as to whether defendant constructively discharged plaintiff. To support such a claim, plaintiff "must produce evidence that the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Penry v. Federal Home Loan Bk.*, 155 F.3d 1257, 1264 (10th Cir.1998). Even viewing plaintiff's allegations in the light most favorable to him the court cannot find that he has met this threshold. Accordingly, it grants summary judgment for the defendant on this claim.

### IV. Conclusion

For the foregoing reasons, the court sustains in part and overrules in part the Motion for Summary Judgment of Defendant City of Topeka, Kansas (doc. 49). Although the court finds that it has subject matter jurisdiction over this action and plaintiff has adequately exhausted his administrative remedies, timely filed his charge of discrimination with the EEOC, and timely filed this action after receiving his right-to-sue letter, it grants summary judgment in favor of defendant on all claims of plaintiff, as set forth herein. It directs the Clerk of the Court to enter judgment for defendant. The ruling on the motion for summary judgment disposes of this case in its entirety.

IT IS SO ORDERED.