Delilah STAHL, Plaintiff,

v.

The BOARD OF COMMISSIONERS OF THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS, Defendant.

Civil Action No. 01–2539–CM.

United States District Court, D. Kansas.

Jan. 24, 2003.

Albert F. Kuhl, Lenexa, KS, for plaintiff.

Henry E. Couchman, Jr., Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff filed this action against defendant alleging gender discrimination and retaliation in violation of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 21).

- **Facts**[1]

- Creation of Special Enforcement Unit

Plaintiff has been employed by defendant as a police officer since 1981. In 1992, defendant promoted plaintiff to the

rank of sergeant. From October 9, 1998 to January 14, 2001, plaintiff was a supervisor in the police department's Vice and Narcotics Unit. Also within the police department during that time was the "S.C.O.R.E." Unit, which was the department's tactical, or SWAT, Unit.

Ronald Miller was appointed Chief of Police in June 2000. Shortly after his appointment, Chief Miller undertook to combine the Vice and Narcotics Unit and the S.C.O.R.E. Unit into a new unit to be called the Special Enforcement Unit (SEU). Chief Miller believed that, by combining the two units, the police department would be able to fight narcotics trafficking and illegal drugs more effectively, and more officers would be available to respond to SWAT calls. It is uncontroverted that the decision to combine the two units was not made to remove plaintiff from her position or otherwise discriminate against her. Rather, the decision was a legitimate restructuring. Chief Miller intended that officers, including sergeants, selected for the SEU would undergo tactical training and perform tactical duties, as well as vice and narcotics-related duties.

The duties of tactical officers are both physically demanding and highly stressful. Plaintiff does not controvert that sergeants in the tactical unit must be prepared to perform the duties of the officers on the team they are leading, which they may be called upon at any time. Accordingly, since the mid 1980s, defendant required its S.C.O.R.E. Unit officers, including sergeants, to pass a physical fitness test as a qualification for the job and to pass periodic physical tests to remain in the unit. Moreover, officers in the S.C.O.R.E. Unit, including sergeants, were required to participate in on-duty physical fitness training

---

1. The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

on a regular basis as part of their job description. Officers in the Vice and Narcotics Unit were not required to complete a physical fitness test, nor were those officers required to participate in physical fitness training. However, on their off time, Vice and Narcotics Unit officers could attend workouts offered by the police department.

● **Physical Fitness Test**

Because all officers in the SEU were expected to undergo tactical training and perform tactical duties, Chief Miller, in conjunction with the command staff, decided that successful completion of a physical fitness test also should be a qualification for the SEU. The same physical fitness test that was used for the S.C.O.R.E. Unit was selected for use for the SEU.

Plaintiff first heard in July 2000 that the Vice and Narcotics Unit and the S.C.O.R.E. Unit would be combined. Around the third week of September 2000, officers in the Vice and Narcotics Unit began discussing the possibility of a physical fitness test. At the end of September 2000, plaintiff obtained a copy of the physical fitness test that would be administered to the SEU candidates. In mid-October, plaintiff received word that a physical fitness test would be required.

During the last week of September or the first week of October, plaintiff began working out at home to prepare for the physical fitness test. Plaintiff mapped out a mile-long course around her home and began running. Plaintiff also began doing sit-ups, push-ups, back arches, sitting and reaching, jumping, and general calisthenics. Plaintiff requested to "flex" her work hours on Tuesdays and Thursdays to attend workout sessions with S.C.O.R.E. officers. Captain Rick Armstrong granted plaintiff's request.

During her prior two years as a supervisor, plaintiff did not participate in any type of regular exercise program. At the time plaintiff began preparing for the test, plaintiff considered herself 25 to 30 pounds overweight and had smoked about a pack of cigarettes a day for the past 30 years. Plaintiff continued to smoke while she was training for the physical fitness test.

Plaintiff felt she had made progress during the time she had trained. However, plaintiff felt she needed more time to get ready for the bench press and the vertical and broad jumps. At some point, plaintiff complained to Captain Armstrong, Lieutenant Douglas Hansen, and Lieutenant Joe Ward that the physical fitness test was not "female friendly" and that she needed more time to lose weight and prepare for the test. The officers encouraged plaintiff to continue working out. Plaintiff testified in her deposition that she was not treated any differently after she complained about the test.

Plaintiff felt that she did not have adequate time to prepare for the test and that her superiors should have apprised her sooner that there would be a physical fitness test. However, no other officer in the Vice and Narcotics Unit had knowledge of the test any earlier than plaintiff. Moreover, every officer in the Vice and Narcotics Unit, all of whom were male, had the same opportunity to train for the physical fitness test.

On October 30, 2000, plaintiff applied for a sergeant position in the SEU. The physical fitness test was administered to sergeant applicants on November 7, 2000. Every individual applying for sergeant took the physical fitness test on the same day and was administered the same test.

The physical fitness test consisted of eleven events: skinfold assessment, trunk flexion (sit and reach), trunk extension, bent-knee sit-ups, 12 minute run, push-ups, pull-ups, squat thrust, bench press, standing broad jump, and standing vertical leap.

Applicants were required to earn an overall score of 70 percent to pass, which was determined by adding together the percentage scores on each event and dividing the number by eleven. An applicant did not have to complete every event successfully to pass the test. Rather, the applicant could skip an event as long as the overall score equaled or exceeded 70 percent. Prior to the test, plaintiff chose to skip the pull-up event. A number of male applicants also elected to skip the pull-up event.

Plaintiff scored 100 percent on the skinfold assessment and 88 percent on the trunk flexion, but received no points on the trunk extension. Plaintiff scored 82 percent on sit-ups, and also passed the push-ups and squat thrust. However, plaintiff fell short on the bench press, vertical jump, and broad jump. As a result, plaintiff failed to achieve a passing score.

Other than plaintiff's own assertions, there is no evidence in the record that the males have an advantage over females in passing the physical fitness test. Plaintiff testified in her deposition that she does not know whether males have an advantage in the trunk extension. Plaintiff did not provide support for her conclusion that the vertical jump is more difficult for women, but plaintiff testified that she thinks women have shorter body mass, are more compact, and do not have the leg strength to do the push. Plaintiff admitted, however, that successfully completing the vertical jump is a matter of building leg muscles and getting in shape for it. Plaintiff also testified in her deposition that she does not know whether her inability to do the standing broad jump was due to the fact that she did not have strong legs or because she is a woman. In an affidavit filed later by plaintiff, plaintiff asserted that the test was discriminatory because: 1) the requirements were heavily weighted in favor of upper-body strength tests, 2)

there is no alternative scoring for males and females in the bench press, pull-up, or push-up categories, and 3) she had not been required to maintain any level of fitness during her time in the Vice and Narcotics Unit.

At the time plaintiff took the test, she weighed 173 pounds. With respect to the bench press, an applicant was required to lift a percentage of his or her body weight. Had plaintiff weighed 140 to 149 pounds, plaintiff would have been required to lift 115 pounds. At the time of the test, plaintiff bench pressed 120 pounds, 10 pounds short of the required weight. Plaintiff believes that she would have passed those events she failed had she been given more time to train. Plaintiff admits, however, that the bench press, vertical jump, and broad jump would have been easier for her had she not been 30 pounds overweight.

Plaintiff testified that Captain Armstrong allowed Officer Mike Whitfield to do his last five push-ups lying on the floor between each push-up. Plaintiff claims this was preferential treatment to a male officer. Officer Whitfield was an applicant for canine officer, not sergeant. There is no other evidence in the record, nor is plaintiff aware of any other occasion, where an applicant for the SEU was given an easier time on the physical fitness test than other applicants.

### ● Plaintiff Fails Physical Fitness Test

Plaintiff was informed that she would not be considered for sergeant in the SEU because she had failed to successfully complete the physical fitness test. Ron Lobner, Ramiro Moran, and Donald Woolley, all of whom successfully completed the physical fitness test, were selected for the sergeant positions in the SEU. Plaintiff testified that she does not know whether Chief Miller, Captain Armstrong, Lieutenant Hansen, or Lieutenant Ward intended

to discriminate against her on the basis of her sex with regard to the SEU sergeant position. According to plaintiff, no member of the command staff made any statement, either before or after November 7, 2000, showing an intent to discriminate against her on the basis of her sex or retaliate against her for complaining. Plaintiff thinks that her supervisors were not paying attention when she told them she needed more time to prepare for the test.

In January 2001, all positions in the Vice and Narcotics and the S.C.O.R.E. Units were abolished. Since that time, plaintiff has held the position of Property/Logistics Supervisor. Plaintiff receives the same regular pay in her current position as she would have received as a sergeant in the SEU.

The physical fitness requirement for admission into the SEU was temporarily suspended as a result of plaintiff's filing of this action. The police department hired a consultant to help determine the most appropriate selection method. Officers who have joined the SEU since the test was suspended have been admitted on the condition that they successfully pass the new test once it is available. If the officers cannot pass the test once it is developed, they will be removed from the unit.

### ● Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A

fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important proce-

dure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

● **Discussion**

● Gender Discrimination

■ Plaintiff alleges that defendant discriminated against her on the basis of her sex by denying her a sergeant's position in the newly created SEU. Specifically, plaintiff contends that defendant applied the test unevenly in a manner discriminatory toward plaintiff, the only female applicant for a sergeant's position. Plaintiff does not assert that the physical fitness test resulted in a disparate impact;[2] rather, plaintiff asserts her claim under a disparate treatment theory. Because disparate treatment is a form of intentional discrimination, the plaintiff must prove that her employer acted with a discriminatory intent or motive. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1424 (10th Cir. 1993).

■ The court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, in order to survive summary judgment, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff carries that burden, the defendant must then articulate a facially nondiscriminatory reason for the challenged employment action. If the defendant makes such a showing, the burden reverts to the plaintiff to prove the proffered nondiscriminatory reason is pretextual.

■ To carry the initial burden of establishing a prima facie case of racial discrimination, plaintiff must show that 1)

she belongs to a protected class; 2) she was qualified for the position; 3) she was not selected for the position; and 4) that the position remained open or was filled with a non-protected class member. *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir.1995). Defendant maintains that plaintiff was not qualified for the position of SEU sergeant because she failed the physical fitness test. However, pursuant to *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462 (10th Cir.1992), when a defendant asserts a lack of qualifications, the inquiry proceeds to the third stage of the *McDonnell Douglas* test. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n. 11 (10th Cir.1999) (holding that defendant may not "short circuit" the *McDonnell Douglas* analysis by challenging plaintiff's qualifications at the prima facie stage; rather, the court need only conclude at the prima facie stage that the plaintiff has shown through credible evidence, including her own testimony, that she was minimally qualified for the position she sought, even if the defendant disputes that evidence) (citing *Kenworthy*, 979 F.2d at 1469).

■ The court therefore turns to the issue of whether defendant's proffered reason is pretextual. To establish pretext, a plaintiff must show either that "a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff may accomplish this by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of cre-

---

**2.** The Pretrial Order states that plaintiff has abandoned her Title VII disparate impact claim. (Pretrial Order at 10).

dence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir.1996)). However, plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

■ Plaintiff first contends that defendant's suspension of the physical fitness test as a qualification for SEU officers supports an inference that the reason given for denying her the position-that she failed the test-is a pretext for discrimination. However, pursuant to Federal Rule of Evidence 407, evidence of defendant's subsequent remedial conduct is inadmissible to prove culpable conduct. As such, plaintiff cannot use such evidence to defeat summary judgment. Fed. R. Civ. 56(e); *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n. 11 (10th Cir.1992) ("In opposing a motion for summary judgment, the nonmovant must make a showing that, 'if reduced to admissible evidence,' would be sufficient to carry the nonmovant's burden of proof at trial.").

Rule 407 provides in pertinent part:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove ... culpable conduct....

Fed.R.Evid. 407. Defendant suspended the use of the physical fitness test after plaintiff filed the instant lawsuit to ensure the department has "the most appropriate selection method available." (Chief Miller Dep. at 28). The court therefore finds that defendant's temporary suspension of the test constitutes a subsequent remedial measure under Rule 407. Moreover, plaintiff argues that defendant's suspen-

sion of the test shows that her claims "are given strong credence by the defendant" and that defendant "now by its own actions effectively concedes that such reliance [on the physical fitness test] is misplaced, and thus pretextual." (Plaintiff's Mem. at 9–10). Thus, plaintiff seeks to use evidence of defendant's subsequent remedial measures to show culpable conduct. Accordingly, such evidence is inadmissible and cannot be used by plaintiff to defeat summary judgment.

Even if evidence of defendant's suspension of the test were admissible, the court does not find such evidence supports an inference of pretext. Standing alone, suspension of the test in the wake of plaintiff's lawsuit is not probative of defendant's state of mind at the time plaintiff was denied the SEU sergeant position. In furtherance of her position, plaintiff points out that, since the test's suspension, three male officers have joined the SEU without having to undergo a physical fitness test, while no female members have joined. However, the officers recently selected for the SEU have been admitted on the condition that they pass a new physical fitness test once it becomes available. More importantly, plaintiff offers no evidence that any female officers have applied for a SEU position after the test was suspended. Thus, defendant's suspension of the test, and the selection of three male officers post-suspension, do not support an inference that the physical fitness test was unevenly applied in a manner discriminatory toward plaintiff.

■ Plaintiff next contends that the test was unevenly administered. Specifically, plaintiff asserts that officers in the S.C.O.R.E. Unit, all of whom were male, were given ongoing weekly physical training opportunities while on duty during the months preceding the test. Plaintiff concedes that such training opportunities

were appropriate given the nature of the S.C.O.R.E. Unit's work. Plaintiff, however, argues that she was given only a few weeks' notice to prepare for the test and that such short notice was a pretext for gender discrimination.

There exists no evidence that the short notice period afforded plaintiff was pretextual. The S.C.O.R.E. Unit officers had been required to participate in physical training long before a merger of the two units was contemplated.[3] There is no evidence that defendant altered the training requirements or afforded the S.C.O.R.E. Unit officers additional training opportunities prior to administration of the physical fitness test. Thus, the fact that plaintiff had not previously been required to participate in physical fitness training was by virtue of the unit to which she was assigned, not her gender. Moreover, there is no evidence in the record, nor does plaintiff allege, that the S.C.O.R.E. Unit officers were given notice of the physical fitness test earlier than plaintiff. Thus, the fact that the S.C.O.R.E. Unit officers participated in required physical training prior to the test does not support an inference of discrimination.

Even more significant, plaintiff presents no evidence that she was treated differently than her similarly situated male counterparts. The job duties of the S.C.O.R.E. Unit officers were different than those of Vice and Narcotics Unit officers. Thus, as plaintiff concedes, required physical training for S.C.O.R.E. officers was appropriate. Accordingly, the court finds that plaintiff was not similarly situated to S.C.O.R.E. Unit officers and that, as a result, any required physical training on the part of S.C.O.R.E. Unit officers does not support an inference of pretext. With respect to those officers with whom plaintiff was similarly situated, no officer from

the Vice and Narcotics Unit, either male or female, participated in required physical fitness training, nor was any officer from that unit afforded time to work out while on duty. Further, no officer from the Vice and Narcotics Unit was given notice of the physical fitness test earlier than plaintiff. Every officer with whom plaintiff was similarly situated, both male and female, had the same amount of time and opportunity to train for the test. Plaintiff has failed to come forward with any evidence that defendant administered the test to plaintiff any differently because she was a woman, nor does there exist any evidence in the record that the notice period given plaintiff was a pretext for gender discrimination.

■ Finally, plaintiff argues that a male was treated more favorably during the physical fitness test and that this supports an inference of pretext. Plaintiff states that, during the physical fitness test, she witnessed Captain Armstrong allow an SEU candidate, Officer Mike Whitfield, to pass the push-up element of the test under preferential circumstances. Specifically, plaintiff asserts that Captain Armstrong allowed Officer Whitfield to perform his final five push-ups by lying on the floor between each push-up. In contrast, plaintiff claims she was required to perform two extra push-ups because Captain Armstrong told her that she had done several incorrectly.

Plaintiff's allegation of differential treatment does not show that defendant's asserted reason for denying her a sergeant position is pretextual. Foremost, plaintiff and Officer Whitfield were not applying for the same job: Officer Whitfield was an applicant for a canine handler position, not a sergeant. Plaintiff asserts no facts that an officer applying for the same position

**3.** The court notes that plaintiff makes no allegation that the S.C.O.R.E. Unit was all male

because of any discriminatory conduct on the part of defendant.

was treated more favorably than she. Moreover, plaintiff has failed to show that the alleged differential treatment would have affected the outcome of the selection process. Plaintiff garnered a passing score on the push-ups event, and plaintiff sets forth no evidence that she was subjected to differential treatment on the events she failed, namely the trunk extension, bench press, vertical jump, and broad jump. Finally, plaintiff testified that she was not aware of any other occasion in which an applicant for the SUE was given an easier time on the physical fitness test. The court concludes that the alleged differential treatment of Officer Whitfield was isolated and inconsequential. The fact that Officer Whitfield, a canine officer candidate, was allowed to lie down between his last five push-ups does not create a genuine issue of fact regarding whether defendant's proffered reason for denying plaintiff a sergeant position was a pretext for gender discrimination. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir.2000) ("Differences in treatment that are trivial ... will not sustain a claim of pretext."). Defendant is entitled to summary judgment on plaintiff's claim of gender discrimination.

#### • Retaliation

■ Plaintiff alleges that defendant retaliated against her for complaining both about the test and about the lack of notice provided to her. To establish a prima facie case of retaliation, plaintiff must show that: (1) she engaged in protected opposition to discrimination; (2) defendant subjected her to an adverse employment action subsequent to the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. *Pastran v. K–Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir.2000). Once plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate, non-

discriminatory reason for the adverse action. If defendant presents evidence of a legitimate business reason, the plaintiff must then be allowed to demonstrate that the defendant's offered reasons are a mere pretext for discrimination. *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir.1996).

■ The court first turns to the issue of whether plaintiff engaged in protected activity. In order to allege protected activity, plaintiff must present evidence showing defendant knew that her concern or complaints related in some way to gender and that she claimed being discriminated against on that basis. *Crumpton v. St. Vincent's Hosp.*, 963 F.Supp. 1104, 1119 (N.D.Ala.1997). Viewing all reasonable inferences in favor of plaintiff, the court concludes that plaintiff's statement to Captain Armstrong, Lieutenant Hansen, and Lieutenant Ward that the physical fitness test was not "female friendly" could be construed as protected activity. However, plaintiff's complaints that she needed more time to prepare for the test did not reasonably convey to defendant that plaintiff was complaining about gender discrimination. Accordingly, the court finds that plaintiff's complaints about needing more time to prepare for the test were not protected activity within the meaning of Title VII.

■ Plaintiff asserts that, because she complained, defendant denied her more preparation time and ultimately denied her a position as sergeant in the SEU. The court determines that defendant's denial of more preparation time does not rise to the level of an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir.1998) (explaining that "mere inconvenience or an alteration of job responsibilities" does not constitute adverse employment action, which requires a "significant change in employment status"). The court is thus left to examine whether

defendant retaliated against plaintiff by denying her a sergeant position for complaining that the test was not "female friendly."

 Plaintiff contends that the temporal proximity between her complaint and the denial of the sergeant position, a matter of 2 to 3 weeks, is sufficient to establish a causal connection. The court agrees and therefore concludes that plaintiff has set forth a prima facie case. *Daneshvar v. Graphic Tech., Inc.,* 18 F.Supp.2d 1277, 1293 (D.Kan.1998) (six-week gap sufficient for jury to infer causal connection); *Newell v. KMart Corp.,* No. Civ. A. 97–2258–KHV, 1998 WL 230966, at *4 (D.Kan. Apr.6, 1998) (four-week period between protected activity and termination sufficient to support causation element); *Rettiger v. IBP, Inc.,* 980 F.Supp. 1182, 1191 (D.Kan.1997) (temporal proximity between protected activity and discharge close enough that reasonable jury could infer causal connection where employer discharged plaintiff less than six weeks after plaintiff lodged complaint of sexual harassment); *Bowers v. Bethany Med. Ctr.,* 959 F.Supp. 1385, 1392 (D.Kan.1997) (plaintiff's discharge within three weeks of her return from disability leave sufficient to satisfy causal connection element of prima facie case). In response, defendant proffers that it denied the sergeant position to plaintiff because she failed the physical examination test. To survive summary judgment, plaintiff must present some evidence that defendant's proffered explanation is unworthy of credence.

Plaintiff has presented no evidence that defendant's stated reason is merely a pretext for retaliation. It is uncontroverted that successful completion of the physical fitness test was a requirement for the position of SEU sergeant and that plaintiff failed the test. Moreover, plaintiff testified that she was not treated any differently after she complained and that no member of the command staff made any statements that showed an intent to retaliate. In sum, plaintiff offers no evidence that retaliation was the reason for her termination. Plaintiff's subjective beliefs are insufficient to demonstrate the pretextual nature of a legitimate job action. *Aramburu v. Boeing,* 112 F.3d 1398, 1407 n. 7 (10th Cir.1997). Defendant is entitled to summary judgment on plaintiff's retaliation claim.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Doc. 21) is granted. This case is hereby dismissed.